**In re Carl James COLLINS, Bankrupt.**

**D. A. LEONARD, Plaintiff,**

v.

**Carl James COLLINS, Defendant.**

**Bankruptcy No. BK–2–79–167.**

United States Bankruptcy Court,
E. D. Tennessee.

Oct. 30, 1979.

W. A. Watson, Bristol, Tenn., for plaintiff.

Frank P. Miller, Bristol, Tenn., for defendant.

### MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

I

Plaintiff asserts the nondischargeability of a judgment rendered in his favor in the State Court in the amount of $35,000 as the liability of the defendant for a willful and malicious injury resulting in the death of his son. § 17a(8), Bankruptcy Act (11 U.S.C. 35(a)(8)).[1] Trial was held July 17, 1979. Findings and conclusions follow:

On November 8, 1975, at approximately 10:30 p. m. the plaintiff's son, Richard Carl Leonard, was a pedestrian on Highway 126

---

1. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as

. . . . "(8) are liabilities for willful and malicious injuries to the person or property of another . . . ." § 17a, Bankruptcy Act.

near Central High School in Sullivan County, Tennessee, near the town of Blountville. The deceased, Richard, was walking on the right-hand side of the road, although apparently a few feet from the pavement. At that time and place defendant, Collins, was operating a 1965 Chevrolet pick-up truck traveling along the highway in a westerly direction toward Kingsport, Tennessee, the same direction that the deceased was walking. Weather conditions were described as dark with patchy fog. The deceased was dressed in dark clothing.

The highway merged from four to two lanes a short distance before the point of the accident. The defendant had been traveling in the outer right lane in order to pass a vehicle that was in the inner right lane. As the defendant pulled in front of the other vehicle he hit a bump or median located at the point where the lanes merged. According to the driver of the second vehicle, the defendant went off the road to the right and struck the deceased, then a mailbox, then pulled off the road and stopped some distance from the point of the accident.

The defendant, Collins, then went to a nearby residence and called the police. Collins then called a friend, Fred Minor, and informed him that he had been in an accident. Collins assisted the State Troopers who responded to the call in searching for the deceased. Upon seeing the body Collins went into shock and was taken by the Rescue Squad to a local hospital. After being treated and released he went to Fred Minor's home.

Plaintiff, D. A. Leonard, thereafter instituted suit against Collins, and on May 17, 1976 judgment was rendered in favor of the plaintiff in the Law Court, Part I, at Blountville, Tennessee, against Collins in the sum of $35,000.

Collins testified that on the night of the accident he was on his way home from a football game. In his testimony at the trial in State Court he stated that he was traveling approximately forty (40) miles per hour. He testified that he had a "couple of beers" that afternoon while playing golf but denies drinking at or after the ball game. Collins observed "a dark bulk" as he started up an incline from the point where the road merged into two lanes. He struck the "object", lost control of the truck, hit a mailbox and came to a stop approximately thirteen hundred and forty-two (1342) feet from the point of impact. Collins was 45 years of age at the time of the accident and had never been arrested for any offense. He did not know Richard Leonard and had no ill will or malice toward him.

At the trial on dischargeability, the plaintiff introduced into evidence certified copies of (1) the Complaint filed by him in the State Court; (2) the Answer of the defendant, Collins; (3) the State Court Judgment; and (4) the testimony and exhibits entered at the trial in State Court. The Complaint alleged that Collins failed to keep a proper lookout ahead; that he drove at a speed in excess of that which could safely be driven under the existing facts and circumstances; that he failed to use due care to see the deceased or due care upon seeing the deceased in violation of T.C.A. § 59–836; that he failed to maintain proper control over his vehicle; that he drove his vehicle while under the influence of drugs or intoxicants in violation of T.C.A. § 59–1031; that he drove in a heedless and reckless disregard for the users of the highway in violation of T.C.A. § 59–858(a); that he discovered or should have discovered the position of peril of the deceased and failed to exercise the last clear chance to avoid the accident; and that all of such actions were willful and wanton or so grossly negligent as to amount to willfulness.

After a jury trial, the plaintiff was awarded a judgment for the sum of $35,000, of which $5,000 was awarded for compensatory damages and $30,000 for punitive damages.

As indicated heretofore, at the trial on dischargeability, Collins testified as to his version of the accident and subsequent events. The testimony of witnesses at the trial on dischargeability and at the trial in State Court centered on the questions of whether Collins was intoxicated and wheth-

er he was traveling at an excessive rate of speed.

Fred Minor, a friend, testified that he had been with Collins during the second half of the football game and immediately after the game. He was also at the scene of the accident after being called by Collins. He testified that he did not see Collins drink any alcohol at the game and that Collins showed no signs of intoxication at the accident scene. He stated that Collins appeared nervous but knew what was happening until the deceased's body was found. At that time Collins appeared to go into shock. Minor testified that Trooper Farley, the officer in charge of the investigation, gave him permission to take Collins to the hospital and that the Trooper said nothing to indicate that Collins should wait at the hospital or that he would be arrested for driving while intoxicated.

George Stonecipher, the driver of the vehicle Collins passed immediately before the accident, testified that Collins was traveling at an excessive rate of speed. He stated that Collins nearly collided with his vehicle, then hit a bump and lost control. Stonecipher's testimony was corroborated by that of James Howard, a passenger in Stonecipher's vehicle.

Plaintiff places much weight on the question of whether Collins was intoxicated. Steve Farley, the State Trooper in charge of the investigation, did not testify at the trial on dischargeability. In his testimony in the State Court he made no statements as to whether Collins was intoxicated. He did not arrest Collins at the scene of the accident or thereafter charge him with driving while intoxicated.

Officer Farley was assisted in the investigation by Curtis Sturgill, who was at that time a State Trooper. Officer Sturgill did not testify at the State trial. In testimony at the trial on dischargeability, Sturgill stated that in his opinion Collins was intoxicated. He testified that the reason he did not arrest Collins was because Officer Farley was in charge and that he thought Farley would make the arrest.

## II

§ 17a of the Bankruptcy Act enacts that "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . . (8) are liabilities for willful and malicious injuries to the person or property of another . . . ."

The holder of the judgment has the burden of proving that it comes within the exception of § 17a. Since the Bankruptcy Act is remedial, evidence is to be reviewed in a light which is most favorable to the bankrupt.

> Clause (8) of § 17a relates to torts: "Inasmuch as this provision tends to impair the bankrupt's remedy, the exception should be so construed as to affect that remedy only so far as is necessarily required by its express terms." Collier on Bankruptcy, 14th Ed., Vol. 1A, § 17.17, p. 1650.3.

The term "willful and malicious" is not defined in the Bankruptcy Act. This Court, in *Judith E. Garland v. Fred Clark, Jr., BK–2–77–400* (April 15, 1978), affirmed on appeal, (1978, E.Dist.Tenn.), recognized that "for a provable liability to come within the exception of § 17a(8), the injuries 'must have been both willful and malicious', Collier, Vol. 1A § 17.17[1] at p. 1650.4, and that that phrase means something more than accidental injuries which happen to occur as the result of the commission of an unlawful act. *Cogswell v. Kells*, 293 Mich. 541, 292 N.W. 483 (1940); *Panchula v. Kaya*, 59 Ohio App. 556, 18 N.E.2d 1003."

This view is in accord with the case of *Randolph v. Edmonds*, 185 Tenn. 37, 202 S.W.2d 664 (1947) where the Tennessee Supreme Court held that an act, to be nondischargeable under the Bankruptcy Act must be *both* "willful and malicious". In *Randolph* the court observed that the award of punitive damages was not enough to imply that the act for which punitive damages was allowed was a malicious act." [Punitive] damages may be awarded for gross negligence which does not involve the element of malice". The court also stated,

citing *Marbry v. Cain*, 180 Tenn. 500 at p. 505, 176 S.W.2d 813 (1944), that "the words 'willful and malicious' as used in the Bankruptcy Act. . . . seem to contemplate some intentional willful act. These words indicate to us the intentional doing of an act which must and does result in injury to a plaintiff, or that class of torts in which malice and injury are always implied."

The question of intoxication has frequently presented problems to the courts as to whether an act is willful and wanton. *In re Kennan*, 3 Bankr.Ct.Dec. 1183 (N.D.Ga. 1977), the court stated:

"This court is troubled by any test which turns solely on the intoxication of a driver. At the one extreme, it does not appear that *negligent* driving by one who happens to be intoxicated falls into the category of willful and malicious conduct. At the other extreme, where a drunken driver operates his vehicle with such recklessness as to make an injury extremely likely, the resulting injury should not be discharged merely because there was no *actual* intent to do the injury. While harm does not necessarily result from such recklessness, the likelihood of injury may be so strong as to make the distinction meaningless. In those cases, the court concludes that the debt should be non-dischargeable."

*In the Matter of Sutton* (E.D.Tenn.1971), the Court stated that "Drinking and subsequent involvement in an accident is not alone negligence." In that case the defendant was allegedly driving at a speed of eighty (80) miles per hour at 3:00 a. m. and was intoxicated. As in the instant case, the defendant was not charged, and therefore, not convicted of driving while intoxicated.

### III

Considering the facts in the instant case and applying the standards enunciated in the cases cited herein, this Court finds and concludes that the judgment in favor of D. A. Leonard in the State Court is a dischargeable debt within the purview of the Bankruptcy Act. "The proof fails to establish a willful or malicious injury, or such wanton conduct on the part of the bankrupt to evince a reckless disregard for the lawful rights of others." *Judith P. Garland v. Fred Clark, Jr.*, supra. The question of Mr. Collins' intoxication is in dispute. He was not arrested for driving while intoxicated. The matter of "excessive speed" is also in dispute. Collins testified that he was driving approximately 40 miles per hour. Mr. Stonecipher stated 35–45 miles per hour. The record does not disclose the posted speed limit.

The plaintiff has failed to meet the burden of proof.

This memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.