In re John William RAINEY, Bankrupt.

SECURITY MUTUAL CASUALTY COM-
PANY, a corporation, Plaintiff,

v.

John William RAINEY, Defendant.

Bankruptcy No. 79–02472.

United States Bankruptcy Court,
D. Oregon.

Dec. 4, 1979.

Richard G. Spier, Portland, Or., for plaintiff.

James F. Spiekerman, Mark A. von Bergen, Portland, Or., for defendant.

## FINDINGS AND CONCLUSIONS

FOLGER JOHNSON, Bankruptcy Judge.

This matter came before the Court by a complaint filed by Security Mutual Casual-

ty Company claiming that under the exception to dischargeability found in § 17a(8) of the Bankruptcy Act [11 U.S.C. § 35(a)(8)], the bankrupt should not be discharged from a judgment debt obtained in an Oregon state court in the amount of $6,653.62 plus costs of $160.60. The judgment creditor, which was an insurer-subrogee of the parties sustaining the original losses, was represented at the trial in this court by its attorney, Richard G. Spier, and the bankrupt was present with its attorneys, James F. Spiekerman and Mark A. von Bergen. The Court heard arguments of counsel and brief testimony of the bankrupt; trial memorandums were submitted by both sides. The Court now makes the following findings and conclusions:

### Findings of Fact

There is no dispute of the essential facts originally educed in the Circuit Court of the State of Oregon for the County of Multnomah (Case No. A7803–04993). On New Year's Eve, 1976–1977, when bankrupt-Rainey was 15 years old and the holder of a learner's permit, he took his parents' car without their permission, and while driving 45 m. p. h. in a residential district became unconscious and allowed the car to leave the road and collide with another auto parked in its owners' driveway. He left the scene of the accident and was found a block away by an officer of the Lake Oswego Police Department. There is no dispute that Rainey had had some alcoholic beverages during the evening prior to the accident, but there is a question as to how much he consumed and how soon before the accident he consumed it. In this court he testified that he had no more than two beers after midnight and that there was a period of time between his drinking and driving. In the state court trial, a police officer testified that Rainey admitted to a six-pack of beer and that his breath had a "strong odor of alcohol," his speech was slurred, his eyes "watery and bloodshot," and his "balance somewhat impaired." However, the police did not test Rainey for intoxication nor charge him with anything other than reckless driving. Neither did the state court make a specific finding of intoxication.

The trial court judge made special findings that Rainey's "negligence" was the proximate cause of the damage to the plaintiffs' car (negligence having been stipulated to by both parties), and that Rainey's conduct was "wanton and willful, justifying the imposition of punitive damages." The court made no special finding of "malice." As to punitive damages, it awarded none because it found plaintiff-car owners to have been fully compensated for their losses prior to trial, thereby precluding punitive damages under Oregon law.

Rainey filed a bankruptcy petition in this court on August 16, 1979, listing the $6,653.62 judgment as a debt to be discharged. Plaintiff-Security Mutual as insurer and subrogee of the reimbursed car owners filed a complaint to determine dischargeability, alleging that the judgment against Rainey was based on liability for "willful and malicious injury to property" and as such was excepted from discharge under § 17a(8) of the Bankruptcy Act.

### Issues and Conclusions

This Court is permitted—and indeed may be required—to look behind a lower court judgment in determining dischargeability. *In Re Houtman*, 568 F.2d 651 (9th Cir. 1978); *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, 5 B.C.D. 226 (1979); *In Re Stokke*, No. B71–3601 (B.Ct. Oregon 1972). Underlying considerations for discharge in bankruptcy are different from those for common law negligence and intentional torts; inquiries and findings necessary for the two types of actions frequently may differ. See *Brown v. Felsen, supra* 99 S.Ct. at 2213, 5 B.C.D. at 229–30. Findings of "intoxication" or "malice" were not made, for example, by the court below, and perhaps they were not necessary to that court's decision. On the other hand, this court may feel that such findings *are* necessary in light of the bankruptcy law's "willful and malicious" language and prior dischargeability cases in-

terpreting it. As the Court of Appeals for the Ninth Circuit so poignantly stated in *Houtman*:

> "As we read those [1970] amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act."

*Houtman, supra* at 653. That court went on to explain that state court proceedings should be regarded only as some evidence for the bankruptcy court to consider in a dischargeability case and that the court should not consider itself bound by such proceedings. *Supra* at 654. The leading case on § 17a(8) is *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754, 11 Am.B.R. 568 (1904), where the Supreme Court attempted to define "willful and malicious" in the context of a criminal conversation action. The court found that the husband's cause of action was based upon the concept of the bankrupt's act of adultery being a violation of the husband's marital rights in the person of his wife. Thus the act of the defendant could be regarded as an injury to the person and to the property rights of the husband. *Tinker*, 193 U.S. at 485, 24 S.Ct. 505, 11 Am.B.R. at 574. While the court made several general pronouncements on "willfulness" (i. e. "The act is willful, of course, in the sense that it is intentional and voluntary . . . ." *Supra* 193 U.S. at 485, 24 S.Ct. at 508, 11 Am.B.R. at 574) and "maliciousness" (i. e. " 'Malice' in law, simply means a depraved inclination on the part of a person to disregard the rights of others, which intent is manifested by his injurious acts." *Supra* 193 U.S. at 486–87, 24 S.Ct. at 509, 11 Am.B.R. at 575), it is obvious from a reading of the entire opinion that the court's statements and citations to other cases were geared rather narrowly to the issue of criminal conversation. Possibly in an effort to place limitations on its broad construction of "malice," the court stated it was not necessary to hold that every willful act which is wrong implies malice, and then the court gave an example which even proponents of a narrow construction of malice would have difficulty accepting:

> "One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious."

*Tinker v. Colwell*, 193 U.S. at 489, 24 S.Ct. at 510, 11 Am.B.R. at 578.

In the quest to find the correct meaning of "willful and malicious," later courts have cited *Tinker* in contexts far removed from the criminal conversation arena, and two lines of authority have developed concurrently: one following a liberal approach, based loosely on a "gross negligence" standard, and the other following a literal approach based generally on a "deliberate and intentional" standard. The dichotomy of approaches seems to be most clearly visible in automobile accident cases, and particularly where drunken driving is involved, although as stated in *1A Collier, Bankruptcy* § 17.17 at 1659 (14 ed. 1978), "The cases shade imperceptively from one group to the other." In *Den Haerynck v. Thompson*, 228 F.2d 72 (10th Cir. 1955) (cited in the plaintiff's trial memorandum), the bankrupt motorist pled guilty to manslaughter for the death of plaintiff's child and then claimed discharge from the ensuing judgment against him. In reversing the grant of the discharge, the Court of Appeals cited *Tinker* and held that a "malignant spirit or a specific intention to injure a particular person or harm his property" was not needed for purposes of the statute.

> "A willful disregard of that which one knows to be his duty, or an act which is wrongful in and of itself, and which necessarily causes injury, if done intentionally, is done willfully and maliciously, within the scope of the exception to dischargeability created by the statute."

*Den Haerynck v. Thompson*, 228 F.2d at 74.

In *In Re Smith*, 161 F.Supp. 896 (W.D.N.Y.1956) (also cited in the plaintiff's trial

memorandum), the bankrupt pled guilty to intoxication after driving his car on the wrong side of the street and into the plaintiff's car. In denying a discharge in bankruptcy, the court stated the "willful and malicious" words in the Act need not involve actual malice.

"In fact, actual malice is seldom present in such cases. If an act, wrongful within itself, is done intentionally and in willful disregard of what one knows to be his duty and which does, through necessity, cause an injury to another, it may be said under the act to be done willfully and maliciously."

In Re Smith, 161 F.Supp. at 897. See also In Re Eastham, 1 BCD 1211 (1975); In Re Irwin, 2 BCD 783 (1976); Harrison v. Donnelly, 153 F.2d 588 (8th Cir. 1946); and Anderson v. McPhate, 192 So.2d 677 (La. App.1966).

However, cases upholding discharges in similar situations are equally numerous and well-reasoned, although as this Court's opinion in In Re Kriger, No. 78–00776 (B.Ct. Oregon, Judge C. E. Luckey, 1978), reveals, "The cases disclose no precise definition of what amounts to a willful and malicious injuring of another sufficiently reprehensible to bring the liability within the scope of § 17." Supra at 9. Mere driving while intoxicated was not sufficient to justify a "willful and malicious" finding by the Oregon Supreme Court in Dillard v. Dillard, 244 Or. 597, 418 P.2d 839 (1966), cert. denied, 386 U.S. 983, 87 S.Ct. 1285, 18 L.Ed.2d 232 (1967), nor by the New Jersey Supreme Court in Tippett v. Sylvester, 127 A. 321, 5 Am.B.R. (N.S.) 580 (N.J.1925). "It [intoxication] may or may not prompt a willful act," stated the court in Tippett, "but we cannot say that because the driver was drunk (if that be the fact) his collision was a willful act." 127 A. at 321, 5 Am.B.R. (N.S.) at 581. Mere excessive speed, though willful, was held insufficient to imply malice for nondischargeability in In Re Vena, 46 F.2d 81 (W.D.Wash.1930). See also Freedman v. Cooper, 126 N.J.L. 177, 17 A.2d 609 (N.J.1941). The Vena court, relying on Tinker v. Colwell, said there must be "some motive or purpose against a person or persons, or a basis for inference of such purpose inspiring the speed." 46 F.2d at 82. In Greenfield v. Tuccillo, 129 F.2d 854 (2d Cir. 1942), a bankrupt was discharged from a judgment claim after pleading guilty to criminal negligence in the operation of a vehicle resulting in death. "The solution depends on whether the story of the bankrupt that the injuries resulted from inadvertence and negligence without intentional wrong is true," reasoned the Court of Appeals for the Second Circuit, "or whether the objecting creditor's story that it resulted from a deliberate disregard of known duty is the correct version."

In In Re Moya, 3 BCD 520 (S.D.Cal.1977), where a bankrupt seeking discharge had lost control of his car while driving under the influence of alcohol and had caused a passenger in his car to be ejected and killed, the court concluded that his actions were not of the "grossest" type which the U.S. Supreme Court had in mind for dischargeability when deciding Tinker. Confronting Tinker head on, the bankruptcy court for the Southern District of California attempted to show that the Supreme Court had addressed only the narrow facts of a criminal conversation action, and that its opinion should be read in the same limited manner. The bankruptcy judge further analyzed that courts reading Tinker so broadly as to apply to auto accident cases have done so erroneously out of a desire to "legislate" a policy of safe driving. 3 BCD at 521–22. The court quoted from a state appellate opinion which labored over a definition of malice in a drunk driving case:

"One who becomes intoxicated, knowing that he intends to drive his automobile on the highway, is of course negligent, and perhaps grossly negligent. It is a reckless and wrongful and illegal thing to do. But it is not a malicious act."

Gombos v. Ashe, 158 Cal.App.2d 517, 526–7, 322 P.2d 933, 940 (1958).

Some of the cases have stated that an act which is wrongful in and of itself (or an act done in willful disregard of a known duty) and which necessarily causes injury is a

"willful and malicious act." Decisions, however, give us no definition of the word "necessarily." The Supreme Court in *Tinker v. Colwell* first used the word as part of its description of the requisite link between the bankrupt's tortious conduct and the injury caused thereby. *See* one of numerous subsequent quotes of that description in *Den Haerynck v. Thompson*, 228 F.2d 72, 74 (10th Cir. 1955), *supra* at pages 571–572. Although courts have repeated the word, either as part of a § 17a(8) determination or as part of a punitive damages determination under state tort law, none—so far as the Court knows—has offered a precise meaning for it. "Necessarily," according to *Webster's New International Unabridged Dictionary* (2d Ed.), means "unavoidably," "indispensably." *Words & Phrases*, Vol. 28 (1955), adds: "[U]navoidably," "indispensably," so that a thing which necessarily must happen *"may reasonably be said to be certain to happen,"* (emphasis added) and then quotes an opinion stating: "[the word] 'necessarily' means inevitable, not to be avoided even by the exercise of the highest degree of care," *Reickert v. Hammond Packing Co.*, 136 Mo.App. 565, 118 S.W. 525, 527 (1909). These definitions seem to dovetail with Report's Notes in the *Restatement (Second) of Torts*, in distinguishing between "intentional misconduct" and "recklessness," though the Notes do not mention the word "necessarily."

*Restatement (Second) of Torts, § 500, Comment:*

"Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, *a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.*" (Emphasis added.)

■ This Court believes that an act which is wrongful and *necessarily* causes injury for § 17a(8) purposes is an act which has the same "substantial certainty" of causing injury (as opposed to a mere "strong probability") mentioned in the Restatement. In further defining "intentional," the Restatement provides additional insight into distinguishing cases with "willful and malicious injury" from those without.

*Restatement (Second) Torts, § 8 A, Comment b.:*

"All consequences which the actor desires to bring about are intended . . . Intent is not, however, limited to consequences which are desired. *If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.* As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness . . . As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence . . ." (Emphasis added.)

■ Again, it appears safe to say that if a person knows that the consequences from his actions are certain, or substantially certain, to occur and yet goes ahead with those actions, the injuries or damages he causes thereby are "necessarily" caused. The indisputably wrongful actions of the bankrupt—driving his parents' car without permission with a mere learner's permit and at 45 m. p. h. on a residential street and even if partially under the influence of alcohol—are not acts which in themselves would *necessarily* produce injury or damage with the kind of "substantial certainty" required for "willful" under § 17a(8). Even if an intention were found, something more than an intention to do the thing afterwards pronounced as wrong and inexcusable is necessary to fulfill the "malice" requisite under § 17a(8). *In Re Carncross*, 114 F.Supp. 119, 120 (W.D.N.Y.1953), and cases cited therein.

Although it is tempting to follow the recent decision of Bankruptcy Judge Hippe in *In Re Rambo*, 5 BCD 800 (M.D.Tenn. 1979), where the facts so closely paralleled those in the present case, this Court specifically disapproves the conclusion in that case based upon an interpretation of Congressional intent for the new Bankruptcy Code. All the substantive facts in *Rambo*, including an automobile accident, judgment against bankrupt and filing of a bankruptcy petition occurred prior to the October 1, 1979, effective date for the new Code. The same is true for the case presently before this Court. The Transition Title in the new Code mandates that "substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable . . . as if the Act had not been enacted." Pub.L.No. 95–598, § 403(a) (Nov. 6, 1978). Therefore, any attempt to apply the Comments and Legislative History concerning the new Code to a pre-October 1, 1979, case would be a violation of the Code's specific statute, as well as a retroactive impairment of the parties' rights arising under the Bankruptcy Act. This is true, we feel, even though the wording for the "willful and malicious" exception to discharge in § 17a(8) of the Act is substantially the same as that found in § 523(a)(6) of the Code.

Despite the inability to use the Congressional statement on "willful" and "malicious" found in the comment to § 523(a)(6), this Court still believes—after reviewing the trial court record and the testimony of the bankrupt and argument of counsel in this Court—that the bankrupt's conduct, though reprehensible and grossly negligent, is not of the type which the drafters of the Act intended to prevent a discharge under § 17a(8).

IT IS THEREFORE the conclusion of the Court that the judgment debt to Security Mutual Casualty Company is a dischargeable obligation in the bankruptcy proceeding of John William Rainey.