**In re John Randle BRYSON, Debtor.**

**Johnny R. WILLIAMS and Eileen Williams f/u/o Allstate Insurance Company, as subrogee, Plaintiff,**

**v.**

**John Randle BRYSON, Defendant.**

**Bankruptcy No. 79 B 40686.**

**Adversary No. 80 A 0030.**

United States Bankruptcy Court, N. D. Illinois, E. D.

April 18, 1980.

Robert B. Simon, Chicago, Ill., for plaintiffs, Johnny R. and Eileen Williams.

Laurance Tyrone Jeffries, Chicago, Ill., for defendant John Bryson.

## MEMORANDUM AND ORDER

THOMAS JAMES, Bankruptcy Judge.

The court held a trial on the complaint of Johnny R. and Eileen Williams, plaintiffs, to determine whether an indebtedness of $4,787 against John R. Bryson, defendant-debtor, was dischargeable under § 523(a)(6) of the Bankruptcy Code, which provides that debts for willful and malicious injuries are not dischargeable. The Williamses appeared by their lawyer, Robert B. Simon, and Bryson by Laurance Tyrone Jeffries. The court has read and considered the complaint and answer and has heard and considered the testimony of the parties and the

---

arguments of counsel. Judgment will be entered in favor of John R. Bryson, defendant.

The court must determine whether John R. Bryson was guilty of willful and malicious injury to another person or the property of another person. The testimony of Johnny R. Williams, plaintiff, John O. Williams, a pharmacist, and John R. Bryson, defendant, establishes the following facts.

On April 23, 1976, the date of the accident, defendant worked as a "mixer's helper" at the Lever Bros. Pepsodent plant from 7:00 a. m. until 3:00 p. m. After 3:00 p. m. he left the plant and met some of his friends at a parking lot between a bowling alley and a liquor store at 63rd Street and Central Avenue. He has no memory of anything that happened between 3:30 and 7:00 p. m. He cannot remember having anything alcoholic to drink, but he cannot account for his actions during that time. Defendant was participating in a program for alcoholics at the time of the accident.

At 7:00 defendant decided to drive home and get some rest before going back to work that night at 11:00. The accident occurred between 7:00 and 7:30 p. m. Plaintiff was driving west into the intersection of 63rd Street and Cicero Avenue at a speed of about 15 m. p. h. Defendant was driving east into the same intersection.

Plaintiff testified that Bryson ran a red light, crossed over the center line, and hit the plaintiff's car head on. Bryson claimed that the plaintiff ran into him. After the accident Bryson sat on the curb, unable to stand up. Williams did not notice the smell of alcohol on Bryson's breath immediately after the accident, but did notice the odor of alcohol when he and Bryson were in a squad car after the accident. No tests were administered to Bryson. Williams testified that he has observed drunk people in other situations and that in his opinion Bryson was drunk. In support of that conclusion he stated that Bryson could not stand up or talk without stuttering after the accident.

In the squad car after the accident Bryson fell asleep and had to be awakened by the police. Bryson testified that immediately before the accident he was aware that he was operating a vehicle, that the accident was sudden and that he tried to stop, but could not stop in time. Bryson was charged with driving while under the influence of alcohol and pleaded guilty to what he described as a "package" which included driving while under the influence.

John O. Williams, a pharmacist, testified that in 1975 he filled Bryson's prescription for diabinase. Diabinase is a drug used to control blood sugar and is normally given to diabetics. Bryson is now taking insulin every day. During the week preceding the accident Bryson did not take the prescribed diabinase, because he felt he was not having any real problems with his blood sugar levels. Bryson also stated that he was not intoxicated that day.

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Plaintiff has shown that Bryson was driving while under the influence of alcohol at the time of the accident. Defendant pleaded guilty to driving while under the influence, was unable to stand up or talk without stuttering after the accident, and drove in an erratic manner before the accident. When he was in the squad car after the accident, the plaintiff noticed the odor of alcohol and observed Bryson sleeping. The testimony of the pharmacist in Bryson's defense did not establish that Bryson's apparent intoxication was due to any medical problem.

The question is whether the injuries caused by the defendant's drunk driving create a debt nondischargeable under § 523(a)(6) of the Bankruptcy Code. Under § 17a(8) of the Bankruptcy Act such debts were held to be nondischargeable. Defendants' conduct of driving under the influence was characterized as "willful and malicious" for the courts concluded that defendant acted in an intentional manner that he knew to be wrongful.

To have an understanding of the present dischargeability section the court will review cases decided under the Act. In *In re*

*Irwin*, 2 Bankr.Ct.Dec. 783 (N.D.Iowa, 1976), the judge found that defendant's driving while intoxicated at an excessive speed without a proper lookout showed a willful disregard for the rights and safety of others and that his liability was for willful and malicious injury to the plaintiff under § 17a(8). The *Irwin* court relied on *Harrison v. Donnelly*, 153 F.2d 588 (8th Cir. 1946), and *Den Haerynck v. Thompson*, 228 F.2d 72 (10th Cir. 1955), for the principle that willful and malicious conduct does not require specific malice. The requirement is described by the court as "willful disregard of that which one knows to be his or her duty or an act wrong in and of itself which necessarily causes injury." 2 Bankr.Ct.Dec. at 785. Intentional infliction of injury can be implied from acts showing reckless indifference to the rights and safety of others. Id., citing *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *Den Haerynck, supra; Harrison, supra* ; and other cases. The court goes on to acknowledge that some courts have required a showing of actual intent before finding willful and malicious behavior, but states that such an analysis would be "fruitless" and contrary to public policy.

The court also calls the parties attention to the *Keenan* cases [3 Bankr.Ct.Dec. 697 (N.D.Ga.); 3 Bankr.Ct.Dec. 1183 (N.D.Ga. 1977); and 4 Bankr.Ct.Dec. 208 (N.D.Ga. 1978)] which deal with the issue of willfulness in drunk driving. In the first case the bankruptcy judge denied the motions for summary judgment holding that drunk driving is a wanton act and therefore not dischargeable, but that there was not clear evidence of drunk driving. The district court [3 Bankr.Ct.Dec. 1183 (N.D.Ga.1977)] affirmed the bankruptcy judge stating that "[I]t does not appear that *negligent* driving by one who happens to be intoxicated falls into the category of willful and malicious conduct. At the other extreme, where a drunken driver operated his vehicle with such recklessness as to make an injury extremely likely, the resulting injury should not be discharged merely because there was no *actual* intent to do the injury. While harm does not necessarily result from such

recklessness, the likelihood of injury is so strong as to make the distinction meaningless. In those cases, the court concludes that the debt should be non-dischargeable." Id. at 1184.

In the final *Keenan* case [4 Bankr.Ct.Dec. 208 (N.D.Ga.1978)] the bankruptcy judge found that the defendant's conduct was so reckless in such a dangerous situation as to be properly labeled as wanton on the basis of the defendant's intoxication, his speed, and his aggressive driving in face of obvious danger. Id. at 209. See also *In re Collins*, 1 B.R. 147, 150, 5 Bankr.Ct.Dec. 1058, 1060 (Bkrtcy.E.D.Tenn.1979), where the court held the debt dischargeable because there was not sufficient proof that the injury was willful and malicious or that defendant's conduct was wanton because both the defendant's intoxication and his alleged "excessive speed" while driving were in dispute.

One bankruptcy court in discussing dischargeability under § 17a(8) did not follow these analyses. In *In re Rainey*, 1 B.R. 569, 5 Bankr.Ct.Dec. 1210 (Bkrtcy.D.Or.1979) the court found that drunk and reckless driving was not willful and malicious. The bankrupt in *Rainey* had been involved in an accident when he was fifteen years old. He was driving at 45 m. p. h. in a residential district when he collided with a parked car. There was some dispute as to how much he had been drinking but a police officer testified that after the accident Rainey's breath smelled of alcohol and that he had shown other signs of being intoxicated. The court concluded that this conduct did not create a liability Congress intended to have excepted from discharge under § 17a(8).

Bankruptcy Judge Folger Johnson limited the holding of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), to the criminal conversation area and refused to adopt a "gross negligence" or a "deliberate and intentional" standard, the bases of which are also reliances of *Tinker*. Bankruptcy Judge Johnson emphasized the Supreme Court's use of the word "necessarily" in the description of the requisite link between the bankrupt's tortious conduct and

the injury it caused (*Tinker, supra*, at 487, 24 S.Ct. at 509) and finds that the bankrupt's wrongful acts do not necessarily produce the injury or damage with the kind of substantial certainty required for willful under § 17a(8).

In *In re Moya*, 3 Bankr.Ct.Dec. 520 (S.D. Cal.1977), the bankruptcy judge observed that those cases holding liabilities resulting from the bankrupt's driving while intoxicated are nondischargeable (listing In re *Eastham, 1 Bankr.Ct.Dec. 1211 (E.D.Tenn. 1975); Morales, supra; Harrison, supra* and *Den Haerynck, supra*) are founded on a misinterpretation or misapplication of *Tinker*. He stated that malice could be implied only from conduct of the "grossest" nature and that none of the acts involved in drunk driving were more than negligent or of such a nature that malice could be implied. Bankruptcy Judge Seymour emphasizes the example in *Tinker* that one who negligently drives through a crowded thoroughfare and negligently runs over an individual would not be within the exception, unless he intentionally did drive over him (*Tinker, supra*, 193 U.S. p. 489, 24 S.Ct. p. 510).

As to the case at bar § 523(a)(6) excepts from discharge in language similar § 17a(8) any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." As has been seen the words "willful and malicious" have not been consistently interpreted in cases under the Bankruptcy Act. To determine Congress's intent this court must look to the legislative history of § 523(a)(6).

Section 523(a)(6) of the original Bankruptcy Reform Act provided that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" was nondischargeable. H.R. 8200, 95th Cong., 1st Sess. (1977). The accompanying report [H.R.Rep.No.595, 95th Cong., 1st Sess. 365 (1977)] U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320 states:

> [P]aragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional.

To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) [sic], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled. The Senate modified this suggestion by adding "conversion or" after "willful and malicious." [523(a)(6), S.B. 2266 95th Cong., 2d Sess., 416 (1978).] Its report is the same as the House Report but for the addition of "conversion or." [S.Rep.No.989, 95th Cong., 2nd Sess. 79 (1978).] The compromise bill contained the language of the House version. [124 Cong.Rec. H11059 (daily ed. Sept. 28, 1978)]. The statements of the sponsors in the House [124 Cong.Rec. H11096 (daily ed. Sept. 28, 1978)] and the Senate [124 Cong.Rec. S17412 (daily ed. Oct. 6, 1978)] were identical and referred only to the selection of the House version of the bill.

As is noted the House Report states that "willful" means "deliberate or intentional"; that to the extent that *Tinker v. Colwell* held that a lesser standard is intended it is overruled; and that to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

■ Congress has intended "willful and malicious" to include conduct that is "deliberate or intentional" such as the court found in *Irwin, supra*, and *Den Haerynck v. Thompson, supra*, and not conduct that shows "reckless disregard."

Here the defendant showed reckless disregard. He was drunk when he ran into the plaintiff. But there is no evidence that the defendant intended to injure anyone. His conduct cannot be described as "willful and malicious" under § 523(a)(6). The court concludes that Bryson's debt to the Williamses is dischargeable.

It is therefore ordered judgment is entered in favor of John Randle Bryson, defendant-debtor, and against Johnny R. Williams and Eileen Williams f/u/o Allstate Insurance Company, as subrogee, plaintiff, and the complaint of Johnny R. Williams

and Eileen Williams f/u/o Allstate Insurance Company, as subrogee, plaintiff, is dismissed. Any debt owed to Johnny R. Williams and Eileen Williams f/u/o Allstate Insurance Company, creditor, is discharged in these proceedings.