**In the Matter of William Craig WOOTEN, Debtor.**

**Jill PROSCH and Kevin Prosch, Plaintiff,**

**v.**

**William Craig WOOTEN, Defendant.**

Bankruptcy No. 82–04317.
AP No. 82–1322.

United States Bankruptcy Court,
N.D. Alabama, S.D.

June 6, 1983.

A. Eric Johnson, Birmingham, Ala., for plaintiff.

Michael G. Kendrick, Birmingham, Ala., for debtor/defendant M. Charles Sterne, Trustee Jack Rivers, U.S. Trustee debtor.

OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

This case arises out of a serious injury to Plaintiffs resulting from the drunken driving of Defendant provoking an accident that occurred on the evening of July 25, 1981. Jill Prosch, while walking single file behind her husband, Kevin Prosch, was hit by a careening automobile driven by the Debtor/Defendant, William Craig Wooten. The Prosches were pushing their bicycles on the left-hand sidewalk up the rather steep incline of Pawnee Avenue on the Southside of Birmingham. The Defendant was coming down Pawnee Avenue from the Eastwood Mall area when the crash occurred. The time was approximately 10:00 o'clock, P.M. The testimony revealed a chance meeting in a bar and drinking, and a hurried dash across town.

William Wooten testified that his lady passenger was interfering with his driving by putting her hands all over him. While trying to push her away with one arm, Mr. Wooten stated that an oncoming car veered slightly into his lane of traffic causing him to swerve. Not being able to control his car properly, he ran up onto the sidewalk, hitting the pregnant Mrs. Prosch and finally coming to rest against a tree. Since it all happened so suddenly, Plaintiffs could offer no testimony as to how the accident occurred.

Jill Prosch was hospitalized with extensive injuries, but fortunately, her baby was born at a later date with no complications.

Plaintiffs' suit asked for a judgment based on damages sustained in the wreck, but it was agreed by the parties before trial that only dischargeability should be determined by the Bankruptcy Judge, leaving the issue of damages to be determined by a jury in an appropriate Court.

## ISSUE

Plaintiffs base their Complaint on Section 523(a)(6), and argue that Defendant's actions were willful and malicious in that Mr. Wooten "was grossly intoxicated and had totally lost control of his faculties and was unable to operate the vehicle which he was driving; further, the said Defendant voluntarily had consumed alcoholic beverages and/or substances defined under the Alabama Uniform Controlled Substances Act."

The Court listened to the testimony, and determined therefrom that Mr. Wooten was "drunk" when the accident occurred, and as a result, was unable to maintain proper control over his car. The issue thus becomes, was Debtor guilty of willful and malicious conduct on this occasion?

■ At least three times since the Code of 1978 went into effect has this Court wrestled with the term "willful and malicious." See *In re McGiboney,* 8 B.R. 987 (Bkrtcy.N.D.Ala.1981), *In re Rice,* 18 B.R. 562 (Bkrtcy.N.D.Ala.1982), and *In re Brown,* 18 B.R. 591 (Bkrtcy.N.D.Ala.1982). While these cases are different in many respects, each one recognizes the proposition that personal ill will towards the injured party is not a requirement of Section 523(a)(6).

The statement that the word "malicious" does not necessarily include "personal ill will or hatred" has long been in the law. *In re Rice,* supra, p. 563.

Willful means done with the will or intentionally, and not inadvertently or negligently. Malicious is not used in the sense of evil, personal ill will or hatred, but simply done consciously and knowingly

wrongful, and without just cause or excuse.

Intent to harm or injure is not required. Intent to do the wrongful act is sufficient and that constitutes the willful part of the act. *In re McGiboney,* p. 989, Supra.

■ While citing several cases that hold drunken driving is not per se willful and malicious conduct, the *In Re Brown,* supra, p. 593, opinion is to the effect that "The circumstances must show a defendant's driving to be of such a gross nature as to imply malice." It is Mr. Wooten's gross misconduct in this case that sets it apart. Jill and Kevin Prosch were not the object of specific malice, only the victims of Mr. Wooten's intentional misconduct. His willfulness and maliciousness lay in the fact that he *intentionally* intoxicated himself and then *intentionally* drove a "lethal weapon" through the streets of Birmingham, with utter disregard of the consequences.

Defendant has cited cases holding that debts arising from an accident involving drunk driving are dischargeable. His argument is that although he may be guilty of gross negligence, the legislative history of Section 523(a)(6) demands a softer standard in determining dischargeability. The Court in *In re Greenwell,* 21 B.R. 419 (Dist.Ct.Ohio 1982), did apply a harsher standard, yet found no error in the Bankruptcy Court's interpretation and review of Section 523(a)(6) and its legislative history, specifically, the Historical and Revision Note following Section 523 that provides:

Under this paragraph (6) "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* 139 [193] U.S. 473 (1902) [24 S.Ct. 505, 48 L.Ed. 754] held that a less strict standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

*Greenwell* held, and this Court agrees with their stance, that:

What is to be gleaned from this review is that Congress intended that it not be sufficient to classify an act as willful and malicious that it be one done for reckless

disregard for consequences. An intentional act is required. It is not, however, necessary to find that personal ill will existed in order for there to be a finding of willful and malicious injury. *In re Obermeyer*, 12 B.R. 26 (B.J., [Bkrtcy.] Ohio, 1981). In the case before us now, we hold that the voluntary drinking by defendant constituted an intentional act sufficient to support the conclusion that the injury caused by defendant was willful and malicious. That is, while the legislature meant to circumscribe the scope of the *Tinker* case, its holding that "willful and malicious" under the statute is satisfied where there is an intentional injury remains valid. Defendant's intentional drinking unleashed the unbroken causitive chain which led to the injury to plaintiff's vehicle. It will not avail defendant in his effort to avoid this result to argue that he did not know plaintiff prior to the accident and therefore the injury could not have been intentionally caused. One is responsible under the law for the natural outcome of his actions.

*In re Rice*, supra, involved a situation where an innocent bystander was shot by a pistol-wielding participant in a barroom brawl. Malice was not directed at the victim, but was implied nevertheless, because of the inherently dangerous nature of the defendant's actions. A quote borrowed and adopted from page 566 of *In re Rice* provides an appropriate conclusion:

> Miscreants who choose to engage in gun battles in public places, endangering the lives of innocent people, should not find a haven for their wrong doing in the Bankruptcy Court.

That Congress has under consideration legislation with which this Opinion is *in line* is illustrated by the quote from *Congressional Record—Senate,* April 27, 1983, S5326, in which Senator DeConcini stated on the floor of the Senate:

> ... What disturbs me more than anything else, Mr. President, quite frankly, is that I have an amendment that would change the standard and would not permit discharge in bankruptcy of obligations arising from the infliction of willful, wanton, or reckless injury.

> Today there exists in the bankruptcy statute an unconscionable loophole which makes it possible for drunk drivers or others who have acted with willful, wanton, or reckless conduct and who have injured, killed, or caused property damage to others to escape civil liability for their actions by having their judgment debt discharged in Federal bankruptcy court. This loophole affords opportunity for scandalous abuse ...

> ... Bankruptcy was never meant to be a shield behind which drunk drivers, and others who have acted in a reckless manner, can absolve themselves of liability. The concept of the fresh start for a debtor must defer to the possibility of a fresh start of the innocent victim. ...

> ... The term reckless generally is understood to mean that the perpetrator of the injury knew of the risk and went ahead with his action anyway. He adverted to the harm. Surely, we do not want to insulate from liability people that conduct themselves in a willful, wanton, or reckless manner as these words are generally understood. It may even be questionable whether we want to discharge a negligent tort-feasor, but my amendment does not address that ...

The Court determines that the debt and obligation due Plaintiffs is *not* dischargeable in bankruptcy and accordingly so ORDERS, and this case shall be set for determination of damages in a proper hearing.