**In re Richard Harley RAY, Debtor.**

**Bruce E. WILSON, Plaintiff-Appellant,**

**v.**

**Richard Harley RAY, Does 1–10, inclusive, Defendant-Appellee.**

**BAP No. CC–82–1389AbVP[1].**
**Bankruptcy No. LA 81–15263–CA.**
**Adv. No. 82–0740–CA.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued March 23, 1983.

Decided Feb. 28, 1985.

---

1. This case was originally appealed to the Bankruptcy Appellate Panels for the Ninth Circuit and pending before it at the time of enactment of the 1984 Amendments to the Bankruptcy Code. The parties have, by agreement, resubmitted the matter to the present Panel pursuant to 28 U.S.C. § 158.

Frederick H. Bysshe, Jr., Lucking, Bertelsen, Bysshe, Kuttler & Smiley, Ventura, Cal., for plaintiff-appellant.

L.M. Schulner, A Law Corp., Camarillo, Cal., for debtor/defendant-appellee.

Before ABRAHAMS, VOLINN and PYLE, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

## I. INTRODUCTION

### A.

The plaintiff, Bruce E. Wilson, in his complaint alleged that the defendant (debtor), on November 5, 1980, was the owner and operator of a Corvette automobile in which plaintiff was a passenger; that defendant operated said vehicle while he was voluntarily intoxicated and was driving under the influence of said intoxicants, was aware of his intoxicated condition and was aware of the probable dangerous consequences of his conduct, and willfully and deliberately failed to avoid said consequences. At said time and place, defendant caused the vehicle he was operating to run off State Highway 33 and collide with a Southern California Edison Pole. T.R. 7 (Appellant's Excerpts of Trial Record).

The complaint further alleged or implied that the claim resulted from defendant's "grossly careless, reckless, negligent and wanton conduct."

Plaintiff seeks damages for serious injury suffered by him as a result of the defendant's wrongful conduct contending that liability for such misconduct is nondischargeable by virtue of 11 U.S.C. § 523(a)(6).

The defendant answered that plaintiff's cause of action was "in the nature of negligence and not the result of willful and malicious injury caused by the debtor." Defendant also filed and noted for hearing a Motion to Dismiss Adversary Proceeding for Failure to State a Claim.

### B.

At the hearing on the motion to dismiss, plaintiff proffered affidavits from witnesses who were in vehicles passed by the Corvette who observed that its speed was in excess of 80 miles per hour and that plaintiff was waving his arms and looking panic stricken. T.R. 40–43. These statements were not considered by the court below.

Plaintiff in his statement of the case avers that defendant was arrested at the scene for violation of California Vehicle Code § 23101 (driving under the influence of liquor and causing injury) and pled guilty to that charge. The police estimated that his speed at the time of the accident was 83.8 miles per hour. It is not clear how these facts became part of the record but they are not challenged and are implicitly accepted by appellee in his responding brief.

## II. RULING OF TRIAL COURT

The trial court in entering its memorandum of decision and judgment, while adverting to findings and conclusions appears to have rendered its judgment on the legal issue tendered by the motion to dismiss. The court focused on plaintiff's allegation that his injury and damage resulted from debtor's grossly careless, reckless, negligent and wanton misconduct which plaintiff contended should be held nondischargeable under 11 U.S.C. § 523(a)(6). The court concluded that intoxication unaccompanied by specific intention to injure or harm is not a basis, under § 523(a)(6), for nondischargeability of the claim of a party whose injury was caused by the drunk driver. The court cited in support of its conclusion *In re Bryson*, 3 B.R. 593, 6 B.C.D. 199, 1 C.B.C.2d 1038 (Bkrtcy., N.D.Ill.1980), *In re Ankowiak*, 9 B.R. 746, 3 C.B.C.2d 964 (Bkrtcy., N.D.Ill.1981), *In re Naser*, 7 B.R. 116, 3 C.B.C.2d 211 (Bkrtcy., W.D.Wisc., 1980), *In re Donnelly*, 6 B.R. 19, 6 B.C.D. 1081 (Bkrtcy.D.Ore.1980) and *In re Kriger*, 2 B.R. 19, 5 B.C.D. 1380 (Bkrtcy.D.Ore. 1979).

Appellee cites the foregoing cases to this court and urges that they are determinative because an intoxicated driver who does not intend harm is by definition not "willful and malicious" as required by § 523(a)(6). Appellee states:

> Nowhere is it alleged that appellee intended to harm appellant. Defendant may have intentionally become intoxicated and may have intentionally drove (*sic*) at high speed, but he did not intend to injure or harm appellee. Nor is there a substantial certainty that appellee's acts would result in harm to plaintiff. Defendant's acts may have been reckless, but they do not present acts which show a substantial certainty of injury to appellant." [2]

Appellee recognizes that the case was decided in the context of a motion to dismiss, stating: "Finally appellant is unable in his pleadings to state a *prima facie* case to show that appellee acted willfully. Further, it is unlikely that appellant, at trial, could make an offer of proof to prove that appellee acted willfully to injure appellant."

## III. DISCUSSION

### A. Application of *Tinker v. Colwell*

Two lines of authority have developed in drunk driving discharge cases under 11 U.S.C. § 523(a)(6). These cases for the most part focus their respective views on the applicability of *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). In that case a husband contended that the bankrupt's discharge could not bar a claim for the tort of criminal conversation or seduction of his wife. The bankrupt contended that there was no evidence that his conduct was "willful or malicious." The court in effect held that if the conduct is gross or wanton, it is equivalent to specific intent to injure or harm. *Tinker* has been interpreted in many subsequent cases as creating a reckless or lesser standard than the literal specific intent standard of § 17a(8), the Bankruptcy Act predecessor of § 523(a)(6). Present controversy has been fueled by a legislative history note which states that *Tinker* has been overruled by § 523(a)(6) to the extent that it held that a looser standard than deliberate or intentional was meant by the statutory "willful." [House Report No. 95–595, 95th Congress, 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.] Despite that statement, the exact language "willful and malicious" was retained in the new legislation. See discussion in 1 *Norton Bankruptcy Law and Practice*, § 27.-53 and cases cited therein, particularly *In re Bryson, supra*, where a drunk driver ran a red light, crossed over center line and ran head on into plaintiff's vehicle. In *Bryson* the court held that because there was no evidence that the debtor intended harm to plaintiff, the discharge would bar recovery.

---

**2.** The foregoing approach was applied by *In re Rainey*, 1 B.R. 569, 5 B.C.D. 1210 (Bkrtcy.D.Ore. 1979). We do not believe this approach is productive or relevant for the reasons discussed in the text of this opinion.

There is a variant in the rejection of *Tinker*'s less than willful standard which was articulated by *In re Rainey, supra,* which dealt with a 15-year-old drunk driver. *Rainey*'s approach involved an examination of whether or not the injury was a necessary consequence of the drunken behavior. It is contended that this is a more objective test than the wanton or reckless standard. Concededly, *Rainey*'s standard is different, but it appears to exchange one subjective criterion for another. In any event, as indicated below, we are of the view that the standard articulated in *Rainey* is neither productive nor appropriate.

The present trend, however, seems to be toward revitalizing *Tinker*. An excellent summary of present caselaw is found in *In re Callaway,* 41 B.R. 341, 344 (Bkrtcy.E.D. Pa.1984), which states: "Clearly, the trend in recent caselaw is to find debts arising from injuries caused by intoxicated drivers nondischargeable under § 523(a)(6). We are inclined to support this view...." See also the discussion in "Accidental 'Willful and Malicious Injury': The Intoxicated Driver and Section 523(a)(6)," 1 Bankr. Dev.J. 135, 152–54 (1984), and cases cited therein: *In re Greenwell,* 21 B.R. 419 (S.D. Ohio 1982), *In re Askew,* 22 B.R. 641 (Bankr.M.D.Ga.1982), and *In re Wooten,* 30 B.R. 357 (Bankr.N.D.Ala.1983). One of the cases cited in *Wooten* is *In re Rice,* 18 B.R. 562 (Bankr.N.D.Ala.1982), where an innocent bystander was shot by a pistol-wielding participant in a barrom brawl. The court concluded: "Miscreants who *choose* to engage in gun battles in public places, endangering the lives of innocent people, should not find a haven for their wrong doing in the Bankruptcy Court." (emph.

supp.) *Wooten* at 359, quoting *Rice* at 566. Such a situation is analogous to that of the voluntarily intoxicated tortfeasor under consideration here. Given this factual setting, we do not believe *Tinker* to be applicable as will be noted below.

### B. Standard of Review on Motion to Dismiss

In general, the allegations of a complaint and all inferences to be fairly drawn from them are taken as true. Dismissal is warranted only where plaintiff has not stated and cannot state a claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and *In re Verco Industries,* 27 B.R. 615 (Bkrtcy. 9th Cir., 1982) stating: "The dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a claimant includes allegations that show on the face of the complaint that there is an insuperable bar to relief...."

### IV. RELATIONSHIP OF § 523(a)(6) TO VOLUNTARY INTOXICATION

As indicated, the extent of *Tinker*'s current viability is subject to controversy. In any event, little if any illumination will be cast on the dischargeability of a claim against a drunk driver by considering the relevance or logic of this early case dealing with the tort of criminal conversation.[3] The cases discussed and cited above, while attempting to distinguish *Tinker*, essentially demonstrate that its application to drunk driving cases is inapposite. We are of the view that because the element of intent is inherent in voluntary intoxication, any discussion of a less than willful standard (thereby invoking *Tinker* ) is irrelevant.

---

**3.** *Tinker* may have some relevance insofar as it demonstrates what Oliver Wendell Holmes, Jr. in *The Common Law* stated over one hundred years ago:

The life of law has not been logic: it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious. Even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed.

It may be that the lack of clarity in legislation and divergence in court rulings on the issue before us reflect ambivalence resulting from legalized and widespread consumption of alcohol and the consequent need to control the great and pervasive damage resulting from its disabling effects. Congress in 1984 enacted legislation which appears to except drunk driving judgments from discharge. 11 U.S.C. § 523(a)(9). That section is not applicable in this case. However, it may reflect current prevalent societal leanings which demonstrate the continuing truth of Holmes' observation.

Plaintiff's complaint is stated in terms of an intentional tort brought about by a defendant who voluntarily and willfully rendered himself bereft of the capacity to operate his vehicle with reasonable competence and due regard for the safety of others. The question presented by such a claim is if a person may intentionally initiate and continue a course leading to intoxication and then claim exculpation from or inapplicability of § 523(a)(6) because the injury or result of his drunkenness was non-volitional or unintended. We think not. The necessary specific intent is present when the election to embark upon such a course with its attendant risks occurs. The inherent danger of driving while intoxicated supplies the necessary maliciousness. If the consequent lack of capacity or failure to exercise reasonable care in the operation of the vehicle causes the injury, the requirements of § 523(a)(6) are met.

## CONCLUSION

One who voluntarily embarks upon a course, which a reasonable person knows, or should know, may significantly impair ability to exercise reasonable care, should be held to have intended the consequences which occur as a result of the diminished capacity.

 We hold that a driver who ingests an intoxicating substance should be subject to a claim of nondischargeability under 11 U.S.C. § 523(a)(6), if it be proved that lack of reasonable care resulting from intoxication caused the accident and injury. On the record before us the complaint was not subject to dismissal.

Reversed and remanded for further proceedings consistent herewith.

ABRAHAMS, Bankruptcy Judge, concurring and dissenting:

I concur with the other members of this panel that this judgment should be reversed but cannot agree with the reasoning the majority provides to guide the trial court on remand.

The essence of my disagreement was expressed by *In re Hostetler*, 3 Bankr.L.Rep. (CCH) ¶ 70,186 (Bkrtcy.M.D.Fla.1984):

Courts which have considered the question of the dischargeability, vel non, of a debt resulting from damages or injuries inflicted on innocent victims by an intoxicated driver have struggled to reconcile the stringent intent requirement imposed by the phrase "willful and malicious injury" with the notion of permitting a wrongdoer to escape the consequences of conduct generally considered to be repulsive or at least grossly reprehensible.

The majority stresses preventing the wrongdoer from escaping the consequences of drunk driving.[1] I agree with the majority's goal but believe that its approach strays too far from the statutory command that the injury be "willful and malicious." With this divergence in mind, I analyze the matter as follows:

### I.

Section 523(a)(6) of the Bankruptcy Code makes nondischargeable any debt for "willful and malicious injury by the debtor to another entity or the property of another entity." The phrase "willful and malicious injury" has been variously interpreted in drunk driving cases. *E.g., In re Greenwell*, 21 B.R. 419 (S.D.Ohio 1982) (defendant who drank intentionally was responsible for "natural outcome" of his acts); *Matter of Wooten*, 30 B.R. 357 (Bkrtcy.N.D.Ala.1983) (willful and malicious injury because debtor intentionally intoxicated himself and then intentionally drove); *In re Bryson*, 3 B.R. 593 (Bkrtcy.N.D.Ill.1980) (drunk driving debts always dischargeable because driver does not intend to injure victim). The bankruptcy judge here ruled that recklessness was not enough and that a specific intent to injure the plaintiff was required. The majority, however, joins other courts that have construed the phrase to

---

1. As used here, "drunk driving" is a general term referring to driving whenever the driver's ability is impaired to any extent by alcohol or other drugs.

allow what is at most a reckless drunk driving injury to create a nondischargeable debt. *E.g., Den Haerynck v. Thompson,* 228 F.2d 72 (10th Cir.1955); *Harrison v. Donnelly,* 153 F.2d 588 (8th Cir.1946); *In re Irwin,* 2 B.C.D. 783 (Bkrtcy.N.D.Iowa 1976).

The Ninth Circuit Court of Appeals and these panels have not spoken on the issue of recklessness as opposed to specific intent in drunk driving cases, but have recently considered this question in cases of conversion and defamation.

In *Matter of Kasler,* 611 F.2d 308 (9th Cir.1979), the court of appeals rejected the recklessness standard for dischargeability of a debt based on California libel and trade disparagement law. The court considered whether a state court judgment necessarily included a finding of willfulness under section 17a(8) of the former Bankruptcy Act, the predecessor of 11 U.S.C. § 523(a)(6). Section 17a(8) made nondischargeable debts for "willful and malicious injuries to the person or property of another." The court looked to *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), for the meaning of willfulness stating, "The leading Supreme Court case defining the word willful in this section of the Bankruptcy Act stated that it meant 'intentional and voluntary.' ... We conclude that the proper definition of a 'willful' injury for the purposes of the Bankruptcy Act is simply an intentional injury." 611 F.2d at 310. The court then looked to California law and concluded that "since reckless disregard for the truth or falsity of the statements could have underlain the arbitration judgments for libel and trade disparagement [the plaintiff] has failed to produce evidence that the arbitration liability was necessarily for 'willful' injuries." 611 F.2d at 311.

In a footnote, *Kasler* recognized the existence of, but declined to extend, a line of cases finding personal injury liabilities aris-

ing from reckless or negligent operation of automobiles to be nondischargeable. 611 F.2d at 310 n. 7. The court said that it would "be inclined to limit those cases to situations involving 'intentional disregard of human life,' ... or 'reckless indifference to the safety of human life.'" *Id.*[2] Moreover, *Kasler* observed that

> [i]n the legislative history accompanying the Bankruptcy Act of 1978, Congress made it unmistakeable that only deliberate or intentional acts should be considered "willful," and that mere reckless disregard did not qualify. H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* [1978] U.S.Code Cong. & Admin.News, at pp. 5787, 6320–21; S.Rep. No. 989, 95th Cong., 2nd Sess. 79, *reprinted in* [1978] U.S.Code Cong. & Admin.News, at pp. 5787, 5865.

*Id.* However, *Kasler* then stated that "the new Bankruptcy [Code], which this Congressional intent informed, is not involved in this case." *Id.*

The Bankruptcy Code did apply to *In re Cecchini,* 37 B.R. 671 (Bkrtcy.App. Panel 9th Cir.), *appeal filed,* No. 84–2265 (9th Cir.1984), which also rejects the recklessness standard. *Cecchini* concerned the dischargeability of a debt based upon the conversion of checks. The debtor, who had a genuine though mistaken belief that the plaintiff owed him money, forged the plaintiff's name on checks and cashed them. On review under the "clearly erroneous" standard, the appellate panel affirmed a finding that the debt was dischargeable. The panel noted the Congress was aware of the conflicting interpretations of "willful and malicious" under section 17a(8) of the Bankruptcy Act when it included that language in section 523(a)(6) of the Bankruptcy Code. After reviewing the same legislative history that *Kasler* discussed, the panel stated: "Congress intended a 'reckless injury' ... to be specifically excluded from the provisions of 11 U.S.C. § 523(a)(6).... [T]he plaintiff must show that the debtors

---

**2.** This language does not support the majority's reasoning. The majority's standard distinguishes the drunk driver who endangers life from the sober driver who endangers life, not the drunk driver who endangers property from the one who endangers life as the *Kasler* footnote suggests.

acted with the intent to injure the plaintiff before the plaintiff can obtain relief...." 37 B.R. at 675. Because the plaintiff in *Cecchini* had not proved that the debtor intended to injure the plaintiff, the debt was dischargeable.

I do not believe that the Code intended to require actual intent for conversion and defamation but a recklessness standard— or, as the majority seems to be suggesting by talking of reasonable care, a negligence standard—for drunk driving. The question is not what is the proper penalty for drunk driving but what Congress meant by "willful and malicious" injury. If Congress did not draft the statute to include drunk driving, it is not for us to legislate it in.[3]

Instead of an intentional injury, the majority looks to an intent to drink. But, simply stated, the intent to drink cannot be a substitute for the intent to injure because drinking usually does not cause bodily injury to third parties.[4] We are not considering those "who *choose* to engage in gun battles in public places," as in the majority's analogy, but those who *choose* to drink. The majority's conclusions would be more acceptable if limited to the facts of this case or to drinking that was likely to result in both driving and injury to others.

## II.

The bankruptcy judge dismissed the complaint on motion of the defendant, holding the debt to be dischargeable because there was not explicit intent to injure the plaintiff. This ruling fails to account for the distorting effects of alcohol. Although *Kasler* and *Cecchini* require an intent to injure the plaintiff, this rule must be modified in drunk driving cases for two reasons: first, a specific intent is difficult— and often impossible—to determine in these cases and, second, the actor should not benefit from interfering with his own ability to form a specific intent.

In these cases, where drinking has clouded the defendant's thought processes, I would satisfy the specific intent requirement by using the approach announced by *In re Rainey*, 1 B.R. 569 (Bkrtcy.D.Or. 1979): "This Court believes that an act which is wrongful and necessarily causes injury for § 17a(8) purposes is an act which has the same 'substantial certainty' of causing injury ... mentioned in the Restatement [ (Second) of Torts § 500 and § 8A comment b]." *Id.* at 573. The court then quoted from comment b:

> All consequences which the actor desires to bring about are intended.... Intent is not, however, limited to consequences which are desired. *If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.* As the probability ... becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness.

*Id.* at 573 (emphasis added by *Rainey*). Thus, an injury would be willful and malicious under section 523(a)(6) if it is the result of conduct that the driver knows is substantially certain to cause an injury.

Even this test is flawed, however, to the extent it requires an actual understanding of the risks when voluntary intoxication prevents full recognition of those risks. Instead of a futile search for what was in the driver's mind, the test must be modified into an objective standard: whether or not a person in normal· control of his faculties

---

**3.** As the majority points out, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, added a new 11 U.S.C. § 523(a)(9) that excepts from discharge certain judgment debts arising from driving while "legally intoxicated." This is one solution to the problem posed by drinking and driving. This legislation does not affect whether conduct also falls under the "willful and malicious injury" standard.

**4.** *See, e.g., Taylor v. Superior Court,* 24 Cal.3d 890, 907, 157 Cal.Rptr. 693, 598 P.2d 854 (1979) (Clark, J., dissenting) ("While driving intoxicated is dangerous, injury is not probable. Thousands, perhaps hundreds of thousands, of Californians each week reach home without accident despite their driving intoxicated.").

would have realized the injury was substantially certain to occur. In determining this question, the trial court should consider all of the circumstances as to the likelihood of the injury. The drinking (and the degree of impairment of driving ability caused by the drinking) combined with other factors such as speed, traffic, the presence of hazards, and prior instances of injury caused by the defendant's drunk driving will all be relevant to deciding if the defendant should have known of a substantial certainty of injury.

### III.

The majority finds exception from discharge whenever there is (1) intoxication[5] and injury caused by a lack of reasonable care resulting from the intoxication. Even if *Kasler* and *Cecchini* are ignored, I cannot hold that these two factors will always satisfy the obvious meaning of the words "willful and malicious," particularly if the drinking has only slightly impaired the debtor's ability to drive and there are additional factors contributing to the injury.

Two examples illustrate my thinking. In the first, the debtor is driving on an unlighted road at a speed well within the speed limits. Suddenly, the plaintiff, dressed in dark clothing, runs across the road. The debtor has had only a small amount to drink, but enough to impair his driving so that he cannot swerve in time to miss the plaintiff. On these facts, the words "willful and malicious" simply do not apply. In the second example, the debtor has had a large amount to drink and his driving ability is seriously impaired. He has a history of drunk driving injuries. Observers have suggested that he not drive. Nevertheless, he drives down a crowded road at a great speed, crosses into oncoming traffic, and strikes plaintiff. On these facts, the conduct is "willful and malicious" because the debtor should have realized that he created a substantial certainty of injury.

### CONCLUSION

Although I join in condemning the defendant's alleged misconduct here, I cannot stretch "willful and malicious" to include all drinking that results in reckless or negligent injury, as the majority has done. I would reverse the judgment but require a substantial certainty standard upon the remand.

5. The majority gives us no definition of "intoxication." Does it mean, e.g., slightly impaired ability, markedly impaired ability, "falling down drunk," or a specific blood alcohol level?