In re George A. GILBRIDE, Debtor.

H. Lawrence JONES, Plaintiff,

v.

George A. GILBRIDE, Defendant.

Bankruptcy No. 81–01477–BKC–JAG. Adv. No. 81–0672–BKC–JAG–A.

United States Bankruptcy Court, S.D. Florida.

April 13, 1983.

K. Jack Breiden, c/o E. Louis Fields, P.A., Fort Lauderdale, Fla., for defendant-debtor.

Chad P. Pugatch, Cooper, Shahady, Frazier & Pugatch, Fort Lauderdale, Fla., for plaintiff.

Herbert S. Freehling, Trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This matter was tried on the complaint of H. Lawrence Jones objecting to the discharge of a judgment for conversion in favor of Jones. The complaint also seeks the denial of discharge of the debtor generally, on several grounds.

Plaintiff made a motion for judgment on the pleadings as to the dischargeability issue, arguing that a state court judgment for conversion is not only sufficient but requires entry of a bankruptcy judgment denying dischargeability. The court reserved ruling on the motion, and now denies it. Likewise, this court reaffirms that the transcript of the state court trial, which was proffered as Plaintiff's Exhibit No. 12 for identification, is not admissible.

▮ The state court judgment for conversion is not res judicata as to the bankruptcy issue of dischargeability, *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Although collateral estoppel (issue preclusion) might apply if the state court determined factual issues using standards identical to those of the Bankruptcy Code, the final judgment (Plaintiff's Exhibit No. 3) recites only legal conclusions, and is insufficient for the application of collateral estoppel. Furthermore, under the philosophy of *Brown v. Felsen,* it would be inappropriate not to permit the debtor to retry the issues relating to conversion, because his motivation for defending in state court could have been entirely different than here where the discharge of the debt in bankruptcy is in question. Similarly, it would be inappropriate for this court to review the record of the state court action because the debtor's incentive to cross-examine and rebut testimony and other evidence presented by plaintiff there was different from that in the bankruptcy court, and, as a result, the state court record might well be prejudicial to this court.

On several key points the court is required to make a fact finding on the basis of contradictory testimony of Jones and of the debtor, George A. Gilbride, because a number of the issues relate to somewhat unusual dealings and agreements between the two which they preferred not to memorialize in writing. There were obviously strong feelings between the parties. Also, these same issues had been litigated for several years previously in state court, and the major witnesses had repeated their testimony several times previously, which makes it more difficult to analyze. However, the debtor's testimony lacked consistency on many subjects and he appeared to be evasive rather than cooperative, so that his testimony as a whole was less credible than that of Jones. The debtor's mother obviously does not have a clear memory of the business transactions she was questioned about. While her testimony was helpful to the debtor in some areas and harmful in other areas, it was impossible to know where her memory was accurate and where not, and her testimony has generally been disregarded. While Jones was not forthcoming on all matters, and his testimony left ambiguities in some areas, it was not riddled with the inconsistencies that were characteristic of Gilbride's testimony.

The transactions between Jones and Gilbride which are important to this adversary action commenced in the early 1970s. The parties lived in the New York—New Jersey area and were acquainted with each other. Jones left the United States for an extend-

ed period. He testified that he left approximately $60,000 in the care of Gilbride, who transferred funds as they were needed to a bank in Puerto Rico, from which Jones transferred them to a brokerage account in Mexico and purchased Mexican municipal bonds. Jones testified that he only received back about $20,000 of these funds. Gilbride's version of the story is that Gilbride sent his own funds to Jones for investment in Mexico; he belatedly learned that Jones had invested all the funds in his own name; and Jones never voluntarily returned Gilbride's funds.

Some time later both were divorced and living in Florida. They purchased one or two condominium apartments and a triplex together, although their testimony was contradictory as to who contributed what and exactly how the transactions were handled. The triplex was put in Gilbride's name alone, as a means of hiding Jones' assets from his former wife, but Gilbride concedes the joint ownership of the triplex. A safety deposit box at Barnett Bank was also held by both. The testimony is conflicting as to why it was opened and what was held in it, but the court finds that most, if not all of the assets, held in the box belonged to Jones and that only Jones regularly entered the box. His explanation, which is believable, is that Gilbride was given access to the box for convenience in the case of Jones' death because he had no other adult relatives in this area. (There also was passing testimony about several other safety deposit boxes which were not involved with the alleged conversion.)

Gilbride never entered the box in question until on or about August 7, 1977 when he entered and removed much of the contents. Gilbride admitted that he took and kept bearer bonds of a substantial value. The testimony was conflicting as to what the other contents of the box were and whether Gilbride initially removed them and returned them or never removed them at all, but all that testimony was irrelevant because plaintiff is only claiming non-dischargeability of a judgment for the conversion of the bonds. Gilbride did not inform Jones of the removal, and when confronted with it, gave no explanation. His explanation in the litigation, however, is that it was a self-help action taken upon his discovery that Jones had put all the funds that had been sent to Puerto Rico and Mexico into accounts or securities in Jones' name only.

Jones initiated a law suit in Broward County Circuit Court, in which he eventually obtained a judgment, including judgment for $57,000 for the conversion of the bonds (Plaintiff's Exhibit No. 3). Jones also sued on the basis of a breach of fiduciary duty for the return of the funds in the amount of $40,000 which he claims were never sent to him in Puerto Rico and were never returned. The complaint also sought the return of $40,000 lent, and despite the similarity of amount sought there is no indication that this was an alternative count to the other. Jones obtained a judgment for conversion and for money lent, totaling $102,940, but was granted no recovery on the claim for funds which should have been sent to Puerto Rico.

Turning to the facts which go only to the issue of the discharge of the debtor, Gilbride had few records to show his financial transactions and could not provide a coherent explanation of money received or spent during the past years. Gilbride testified that there was a loss of records from a break-in and therefore he has been able to produce only the most recent records in the bankruptcy court. The records produced, and which were admitted into evidence, consist of his individual income tax returns for 1978, 1979 and 1980 (Plaintiff's Composite Exhibit No. 4); bank statements and cancelled checks for Gilbride's personal checking account for October, 1980 through November, 1981 (Plaintiff's Composite Exhibits No. 5 and 6); bank statements and cancelled checks for the corporation Lady Katherine, Inc. (Plaintiff's Composite Exhibit No. 7); the financial statement and income tax return of Lady Katherine for the year ending March 31, 1979 (Plaintiff's Composite Exhibit No. 10) and copies of promissory notes or other evidences of indebtedness by Gilbride to Katherine Cole and Angelo DeStefano (Plaintiff's Exhibit

No. 8 and Plaintiff's Composite Exhibit No. 11).

The testimony show that the debtor had been a bank officer, that he then operated the store owned by Lady Katherine, Inc., and that he is now a bartender. Much of the testimony of Gilbride, Cole and DeStefano concerned Lady Katherine, Inc., which had been formed very shortly before Jones' state court law suit was filed. Gilbride's testimony was inconsistent and contradictory to itself, to the other witnesses' and to the documentary evidence. He testified that his mother owned the corporation and started the business so that he would have a place to work near to her, and he explained his failure to produce certain records on the basis that they were not his personal records, but records of the corporation and/or in the possession of his mother. However, he took business losses on his individual tax return, and it was obvious that he "ran" the corporation and that his mother was totally incapable of doing so, or even of being aware of all the financial arrangements. Despite the conflicting testimony, it is apparent that between 1977 or 1978 and the end of 1981, Gilbride had at least the following income: approximately $55,000 from the safe deposit bonds which he cashed, a $25,000 loan from his mother for personal living expenses while Lady Katherine was starting up, a loan of $17,000 from DeStefano, and $10,000 from a stock sale. The debtor's explanation for what happened to this money is that he spent it for living expenses, but he does not have records to demonstrate that.

■ The court concludes that the judgment debt of $57,000 for conversion is non-dischargeable under 11 U.S.C. § 523(a)(6). Even if Gilbride felt the money was owed him, he did not have the legal right to remove the bonds by his own means and permanently deprive Jones of them. This constituted an intentional conversion and is not dischargeable. Plaintiff's position was that conversion comes within the term "larceny" in 11 U.S.C. § 523(a)(4). It appears that it is more properly included under 11 U.S.C. subsection (6). Although a mere technical conversion may not be excepted from discharge, an intentional deprivation of the property of another is sufficient to satisfy the "maliciousness" requirement. See 3 Collier on Bankruptcy ¶ 523.16 (15th ed.)

■ The court also concludes that the debtor must be denied his discharge under 11 U.S.C. § 727. The lack of a detailed explanation of how the one hundred thousand some dollars was spent by Gilbride would not alone be sufficient to deny a discharge because it would not require an excessively luxurious life style to spend that amount of money on living expenses over the period during which Gilbride received it.

Plaintiff complains that the $10,000 sale of stock was not listed on the schedules as a transfer, even though it was within a year prior to the bankruptcy. Gilbride's explanation is that he viewed this as akin to withdrawing money from a bank account and did not see the need to list it. This explanation also would be credible, were it not for the totality of the debtor's testimony regarding all his financial affairs. In particular, this court would not deny discharge to a debtor simply because he kept his money in a dresser drawer rather than in a bank account, where other records are sufficient to show the amount which was so held, and where his explanation of using it for living expenses is credible. However, the insufficiency of debtor's records makes it impossible for creditors to determine from the records whether or not he was concealing assets and the debtor has not alleviated that problem by providing even a testimonial explanation. Instead, he has provided several confusing and conflicting explanations and has attempted through his testimony to conceal information, if not assets. On balance, the debtor's discharge must be denied under § 727(a)(3). Not having discharged his responsibilities in bankruptcy, the debtor may not be discharged of his debts.

Pursuant to Bankruptcy Rule 921(a), a Final Judgment incorporating these Findings and Conclusions is being entered this date.