**In the Matter of Robert Ray HELD, Debtor.**

**Ann F. MILLER, Plaintiff,**

v.

**Robert Ray HELD, Defendant.**

**In the Matter of Jack David HELD, Debtor.**

**Ann F. MILLER, Plaintiff,**

v.

**Jack David HELD, Defendant.**

**Bankruptcy No. 82–230.**
**Adv. No. 82–139.**
**Bankruptcy No. 82–229.**
**Adv. No. 82–140.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 17, 1983.

Lawrence S. Kleinfeld, St. Petersburg, Fla., trustee.

Elihu H. Berman, Clearwater, Fla., for plaintiff.

Frank Quesada, Clearwater, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is the dischargeability, vel non, of a debt due and owing to the Plaintiff by the Defendants in the above-styled adversary proceedings. A controversy involving the dischargeability of a debt is a proceeding arising in Title 11 U.S.C., therefore, the jurisdiction of this Court is based on Emergency Local Rule (c)(1).

Inasmuch as the two above-styled adversary proceedings involve the same facts and legal issues, the proceedings were consolidated for final evidentiary hearing.

The facts relevant and germane to a resolution of this controversy can be summarized as follows:

The Defendant, Robert Ray Held, together with his brother and co-Defendant, Jack David Held, at all times relevant to this controversy were pawnbrokers licensed under the laws of the State of Florida and were doing business under the name of B–E–Z Pawn Shop. On July 16, 1980, the Plaintiff, Ann F. Miller, in immediate need of funds, went to the B–E–Z Pawn Shop and entered into an agreement with Jack Held who acted on behalf of B–E–Z Pawn Shop (Pl's Exh. # 1). According to the terms of the written agreement, the Plaintiff sold certain items of jewelry to the Defendants for $4,200 and retained a 30 day option to buy back the jewelry. The Plaintiff signed the agreement and received a copy. On August 19, 1980, after the 30 day period had expired, the Defendants began selling and smelting certain items of jewelry pawned by the Plaintiff.

On September 12, 1980, the Plaintiff returned to the B–E–Z Pawn Shop to redeem her jewelry and again spoke with Jack Held who informed her that her property had been sold or otherwise disposed of and was no longer subject to redemption. Three days later, the Plaintiff, through her attorney, made written demand for the return of her property and proffered a check to repurchase her jewelry. The letter accompanying the check (Pl's Composite Exh. # 3) indicated that the check was in the amount of $4,900, representing $3,500 repayment of the loan, $700 interest for the first thirty day loan period and $700 for the second thirty day loan period. The check, although indicating an amount of $4,900 in numerals, indicated "Four thousand + 00/100" in script. (Pl's Composite Exh. # 3).

On behalf of B–E–Z, Jack Held replied to Plaintiff's attorney by letter and refused to accept the tendered check. Jack Held contended that although the Plaintiff was given an opportunity to obtain a six-month loan, she instead chose to enter into a buy/sell agreement to be commenced on July 17, 1980, and to be terminated thirty days later. Jack Held's reply letter further indicates that "Ann Miller was made fully aware of the terms of the contract and received copies of the same," and, furthermore, that Ann Miller had read Florida Statute Section 715.04 in its entirety (Pl's Exh. # 4), as evidenced by her signature. (Pl's Exh. # 2)

It is the position of the Plaintiff that under applicable Florida law she had entered into a loan transaction and had six months in which to redeem her pledged property.

Florida Statute § 715.04 provides as follows:

715.04 Pawnbrokers; disposition of pledged property for nonpayment of principal or interest.—

(1) Any article or articles placed with a licensed pawnbroker within this state pledged as security for a loan of money shall be subject to sale and disposal at public or private sale when there has been no payment on account of principal or interest made for a period of 6 months, subject to the provisions of this section.

(2) Every pawn ticket or receipt for such pledge shall have printed thereon the provisions of subsections (1) and (2) which shall constitute notice to the pledgor of such sale and disposal and shall further constitute notice of intention to sell and dispose of the property without further notice to the pledgor, and shall further constitute consent to such sale by the pledgor. Any sale or disposal of property under this section shall terminate all liability of the pledgee to the pledgor and shall vest in a purchaser the right, title and interest of the pledgor and pawnbroker.

Fla.Stat. § 715.04 (1981).

The Plaintiff sued the Defendants for conversion of personal property in the Circuit Court of Pinellas County, Florida. Pursuant to an order of that Court, the

Defendants delivered to the Plaintiff all jewelry pawned by the Plaintiff which remained in their possession. The parties proceeded to trial and the jury determined that the transaction between the parties was a pledge and not a sale with a right to redeem the property. The jury awarded the Plaintiff $35,000 in compensatory damages and $37,000 in punitive damages. The Court entered a final judgment awarding the Plaintiff $64,000.

■ The Defendants filed Petitions for relief under Chapter 7 of the Bankruptcy Code. The Plaintiff seeks to except the debt owed to her from the Defendants' general discharge pursuant to 11 U.S.C. § 523(a)(6) which states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

It is clear from the legislative history of § 523(a)(6) that "willful and malicious injury" includes willful and malicious conversion, even though conversion as a ground to except a liability from the general discharge is not mentioned in the Code. *See,* 3 *Collier on Bankruptcy,* ¶ 523.16 (15th ed. 1983).

■ There is no question that the judgment of the state court is res judicata on the issue of conversion. However, it is equally clear that the character of the liability, i.e. whether or not the liability represented by the state court judgment is within the overall protection afforded by the general discharge must be determined by the Bankruptcy Court. The Court must, therefore, determine whether the Defendants converted the property of the Plaintiff with the requisite degree of willfulness and malice which would render the judgment debt non-dischargeable under § 523(a)(6).

■ Contrary to the contention of the Plaintiff, the state court award of punitive damages is not dispositive of this issue. The jury in the state court action was instructed as follows:

"If the Defendants knew or should have known that they had no right to sell or dispose of the Plaintiff's jewelry, or the refuse to return to her those items still in their possession when she came in to redeem them from pawn, punitive damages may be awarded. . . . The standard for determining whether or not punitive damages are applicable is that the acts of the Defendants were willful or showed *reckless indifference* to the rights of the Plaintiff."

Transcript of hearing, p. 324, lines 12–23 (emphasis added).

The Plaintiff, citing *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), contends that because the conversion was unlawful, wrongful and tortious, it was, as a matter of law, malicious. However, *Tinker* and its progeny have been expressly overruled by § 523(a)(6) of the Code to the extent that they apply a looser "reckless disregard" standard. H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

At the final evidentiary hearing it became apparent that the Defendant Robert Ray Held had no contact at all with the Plaintiff and took no part in liquidating her jewelry. Accordingly, at the close of the trial, the Court announced that the Complaint to Determine Dischargeability of Debt filed by the Plaintiff against Robert Ray Held, Adversary Proceeding No. 82–139, would be dismissed with prejudice for lack of proof.

■ As to the remaining Defendant Jack David Held, the testimony and evidence presented at the final evidentiary hearing indicate that Jack Held disposed of the jewelry pawned by the Plaintiff in good faith under the mistaken assumption that he had the right to do so under the terms of the agreement entered into by himself on behalf of B–E–Z Pawn Shop and by the Plaintiff. Once Jack Held was made aware of the fact that there was some question as to his right to liquidate the pawned property, he refrained from further selling or

smelting Plaintiff's jewelry. Where the conversion occurred without a conscious intent to violate the property rights of another, § 523(a)(6) does not except the liability for conversion from discharge. *Pioneer Bank and Trust Co. v. Scotella (In re Scotella),* 18 B.R. 975 (Bkrtcy.N.D.Ill.1982); *Meneley Motors, Inc. v. Giantvalley (In re Giantvalley),* 14 B.R. 457 (Bkrtcy.D.Nev. 1981); *In re Meyer,* 7 B.R. 932 (Bkrtcy.N.D. Ill.1981); *Grand Piano & Furniture Co. v. Hodges (In re Hodges),* 4 B.R. 513 (Bkrtcy. W.D.Va.1980). *See also, Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Although the jury in the state court action determined that Jack Held tortiously converted the property of Ann Miller, the conduct did not constitute a willful and malicious conversion within the meaning of § 523(a)(6).

Separate final judgments will be entered in accordance with the foregoing.