In re Byron Thomas RICKETTS a/k/a
William Byron Ricketts, Debtor.

Mae Teresa DUNKINSON, Plaintiff,

v.

William Byron RICKETTS, Defendant.

Bankruptcy No. 83–A–1684.
Adv. No. 84–0064A.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

May 16, 1984.

Lawrence Heffner, Jr., Frederick, Md.,
for debtor/defendant.

Barry Kissin, Frederick, Md., for plaintiff.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

On January 23, 1984, Mae Teresa Dunkinson filed a complaint in this court seeking a determination that a debt of $5,719.05 owed to her by Byron Thomas Ricketts is nondischargeable under 11 U.S.C. § 523(a)(6). The debt in question resulted from a default judgment entered against both the debtor and his now estranged wife, Cathy Ricketts, on August 12, 1983, in the District Court of Maryland for Frederick County.

Plaintiff, a 64-year old woman without children who was widowed two years ago, is alone in the world. She is totally disabled from a heart condition and from myasthenia gravis, a debilitating disease that requires constant medication to permit its victims to achieve some measure of muscle control. In early March, 1983, the plaintiff noticed a classified advertisement appearing in the Frederick newspaper which provided as follows:

"We would like to care for the sick & elderly people in our home. We provide excellent care. Call 1–271–2499 anytime."

Responding to this ad, Mrs. Dunkinson arranged with the Ricketts to move into their home at 10055 Long Mill Road, Rocky Ridge, Maryland. She paid them $300.00 rent in advance on March 7, 1983. Unfortunately for Mrs. Dunkinson, she did not have the foresight to examine the premises before moving in. Instead, she arranged with Mr. Ricketts to carry her furniture, furnishings, and possessions to his home. This home consisted of two bedrooms and a bath upstairs, and a living room, dining room, kitchen, and summer porch on the first floor. At the time, an elderly gentleman by the name of Joseph Garlick (phonetically) was also boarding with the Ricketts. The Ricketts told Mrs. Dunkinson that Mr. Garlick was Cathy Ricketts' grandfather. This 92-year old man was not related to them, however, as Mrs. Dunkinson later discovered. Mrs. Dunkinson testified that Mr. Garlick received poor treatment while she occupied the premises and that she heard him being beaten by the Ricketts.

One of the two bedrooms was occupied by Mr. and Mrs. Ricketts. Mr. Garlick was kept in the second bedroom. According to Mrs. Dunkinson, Mr. Garlick was often locked in for the entire day and deprived of food and water. The room provided for Mrs. Dunkinson was the bathroom. This was the only bathroom in the house, so that if any resident was desirous of using the facilities, the plaintiff would have to leave the room. These conditions very quickly became intolerable for the plaintiff, and she requested that the defendant drive her to Frederick. He did so, providing that she pay him $20.00, but he did not permit her to take anything with her other than the clothing that she was wearing. Only after the intercession of a representative of the Frederick County Department of Social Services was Mrs. Dunkinson permitted to retrieve her clothing and the flag from her deceased husband's coffin. Although she requested that the defendant permit her to remove her personal belongings, he refused.

Mrs. Dunkinson then sought legal aid, and legal aid counsel filed a replevin action against the defendant. On the morning of trial, defendant told Mrs. Dunkinson's counsel that the plaintiff could get a moving van and remove her things. She obtained a van the following day, paid $168.75 for it, only to be refused admittance to the premises. The plaintiff then called the Sheriff and was advised that there would have to be another hearing. She thereafter obtained a writ of replevin from the District Court and went to the property with the Deputy Sheriff to pick up her property. In the two months since she had left, the property had been deliberately exposed to the elements. Mr. Ricketts had removed her belongings to a garage with a leaky roof and a dirt floor. The property was moldy and otherwise damaged. Defendant had removed the plaintiff's television set from her antique table in the living room, torn off the antenna, and dumped it into the garage. The antique table, together with numerous other items, were "missing" by the time Mrs. Dunkinson was able to retrieve her belongings. Plaintiff did not receive back either the gold crucifix from her husband's casket or her first communion picture.

On at least two occasions, the defendant deliberately denied plaintiff access to the premises knowing that such conduct would cause her serious emotional distress. Neither Byron Ricketts nor his wife appeared to answer the suit brought by Mrs. Dunkinson for conversion, etc., in the District Court of Maryland for Frederick County.

■ The plaintiff objects under 11 U.S.C. § 523(a)(6) to the discharge of the debt resulting from the judgment obtained in the District Court suit. That section provides:

§ 523. *Exceptions to discharge*

(a) A discharge under section 727, 1141, or 1328(b) of this title does not

discharge an individual debtor from any debt—

* * * * * *

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

The legislative history of this provision indicates clearly that the phrase "willful and malicious injury" includes willful and malicious conversion. 124 Cong.Rec. H 11,095-6 (Sept. 28, 1978); S 17,412-13 (Oct. 6, 1978).

■ "Willful and malicious injury" has been interpreted to encompass the following:

> An injury to an entity or property may be malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 Collier on Bankruptcy, ¶ 523.16[1] (15th ed.). The term "malicious" has been interpreted to require knowing wrongfulness or knowing disregard of the rights of another. *Bennett v. W.T. Grant Co.*, 481 F.2d 664, 665 (4th Cir.1973). Therefore, a mere technical conversion cannot be excepted from discharge, whereas, an intentional deprivation of another person's property is sufficient to satisfy the "maliciousness" requirement. *Id. See also In re Gilbride*, 32 B.R. 75 (BC S.D.Fla.1983) (judgment debt for conversion of bonds held nondischargeable); *In re Gatte*, 31 B.R. 46 (BC W.D.La.1983) (seller's repossession constituted technical conversion not subject to exception from discharge).

In the present case, the evidence clearly indicates that the debtor acted in knowing disregard of Mrs. Dunkinson's right to possession of her property. The defendant's explanations for these occurrences were incredible. Defendant expressly disclaimed any effort on his part to do anything other than return the property to his tenant. In light of the evidence produced by the plaintiff, any assertion that Mr. Ricketts did not act intentionally to deprive Mrs. Dunkinson of her possessions seems ludicrous. Defendant further claimed that the property was stored in the garage from the beginning of the plaintiff's tenancy. The court finds as a fact that the property was not moved into the garage until after the plaintiff left. The defendant maliciously caused injury to the plaintiff's property by exposing it to the elements, well knowing what the result would be. The court finds the value of the property to be that testified to by the plaintiff. The court finds further that the defendant compounded his misdeeds by refusing to turn the property over to Mrs. Dunkinson when requested on numerous occasions. *See Matter of Held*, 34 B.R. 151, 154 (BC M.D.Fla.1983) (where debtor refrained from further disposition of plaintiff's property when he became aware that his right to do so was in question, his conduct did not constitute "willful and malicious" conversion).

■ The court holds that the property damages awarded by the District Court of Maryland for Frederick County ($3,219.05), as well as the punitive damages of $1,800.00 for the time the plaintiff was denied access to her property, are nondischargeable debts. The court further awards costs of the District Court action of $40.00 and directs the defendant to pay the costs of this action of $60.00 to Clerk of this court since this case was filed *in forma pauperis*. The court will not allow recovery for the $700.00 of punitive damages awarded the plaintiff for the period during which the plaintiff claims she was improperly housed.

A judgment will be entered in accordance with this opinion.