In re James Robert REEVES, Debtor.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Homer H. Stephens, and Ethel Pauline Stephens, Plaintiffs,

v.

James Robert REEVES, Defendant.

Bankruptcy No. 82–00814.
Adv. No. 82–0504.

United States Bankruptcy Court,
N.D. Alabama.

Dec. 23, 1985.

Harvey Campbell, Talladega, Ala., for debtor.

Charles Gaines, Talladega, Ala., for plaintiff-creditor.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction —*

The above-styled case was commenced by the debtor's petition filed under title 11, chapter 7, United States Code, on February 8, 1982, and is still pending under said chapter. The above-styled adversary proceeding was commenced by the plaintiffs to determine the dischargeability of debts, alleged to be for willful and malicious injuries resulting from the drunken driving of the debtor. Upon a general denial by the debtor-defendant, the issues were tried be-

fore the bankruptcy judge, without intervention of a jury. At the trial, any claim for property damages was waived. The debtor failed to appear for the trial of this proceeding.

*Findings of Fact —*

From the testimony of the witnesses and the exhibits offered at trial the Court finds that the facts are as set forth below:

1. At approximately 5:00 to 5:30 o'clock on the evening of June 1, 1979, Ethel Pauline Stephens was injured when the pickup truck in which she was riding on Alabama Highway 77 was struck from the rear by an automobile driven by the debtor-defendant, James Robert Reeves. The pickup truck in which Mrs. Stephens was a passenger had stopped on the highway while the driver signalled a left-hand turn and awaited the passage of oncoming vehicles. The force of the collision was such that the rear bed of the truck was torn from the rest of the truck, and Mrs. Stephens was thrown onto the pavement from the rear of the truck where she was riding. As a result of the accident, one of Mrs. Stephens' legs was broken, necessitating the insertion of a pin in her leg and an eighteen-day stay in the hospital for treatment of the injury.

2. In connection with the collision, James Robert Reeves was cited for driving while intoxicated and for driving without a license on Alabama Highway 77, as to which charges Mr. Reeves plead guilty and was convicted.

3. The injury to Mrs. Stephens was the proximate result of operation of an automobile by Mr. Reeves while he was in a drunken or intoxicated state.

■ Exhibits offered by the plaintiffs concerning the conviction of Mr. Reeves for driving on June 1, 1979, while intoxicated and for driving without a license were "relevant evidence" as that term is defined in Federal Rule of Evidence 401, made applicable to this proceeding by Bankruptcy Rule 9017. Despite the argument of Mr. Reeves' attorney that there was no evidence which ruled out the possibility that the conviction was for a separate incident on the same day, the exhibits offered as evidence have the tendency to make the existence of Mr. Reeves' intoxication and his driving without a license at the time of the accident involving Mrs. Stephens more probable than such facts would be without the evidence. The exhibits, therefore, are admitted into evidence and have been incorporated in the Findings of Fact.

*Conclusions of Law —*

Having concluded on the evidence that Mr. Reeves was driving while intoxicated at the time of the accident injuring Mrs. Stephens, the Court must determine whether her resulting claim is one for a "willful and malicious injury by the debtor." Title 11, United States Code, § 523(a)(6) provides:

§ 523—Exceptions to Discharge [in Bankruptcy].

(a) A discharge under §§ 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

If the attention of a large group of citizens could be directed to the question presented here, it probably would seem obvious to a substantial majority that the debtor should not be discharged or relieved of liability for this type of injury in a bankruptcy case wherein little or nothing would be paid to the victim by the debtor or from the debtor's property. It is, however, a great deal less than obvious that a debtor is not discharged from such a liability under the above bankruptcy statute.

It is informative to note the opposite interpretations of § 523(a)(6) stated by two of the bankruptcy courts in this circuit. In the case of *In re Askew*,[1] Bankruptcy Judge Mosley pointed out that the essential wording of the exception to discharge of a bankrupt or debtor is the same in § 17a.(8)

---

1. 22 B.R. 641 (Bankr.M.D.Ga.1982), *aff'd.* 705    F.2d 469 (11th Cir.1983).

of the Bankruptcy Act of 1898,[2] as last amended, and in 11 U.S.C. § 523(a)(6), enacted by the Bankruptcy Reform Act of 1978.[3] Judge Mosley further noted the often-quoted "legislative history" regarding the present statute,[4] which is to the effect that in "this paragraph, 'willful' means deliberate or intentional" and that a standard of conduct based upon "reckless disregard" of the consequences is overruled, insofar as various courts had deduced such an interpretation from the Supreme Court's decision in *Tinker v. Colwell.*[5] Judge Mosley rejected that assertion in the legislative reports, stating: "Congress by legislation may change the law as found by the courts, but a few obscure words in the legislative history is [sic] insufficient to change the meaning of words interpreted by the courts." [6]

In the case of *Matter of Held,*[7] Bankruptcy Judge Paskay adopted the assertion in the referred-to "legislative history" regarding § 523(a)(6), as follows:

> The plaintiff, citing *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) [sic, 1904], contends that because the conversion was unlawful, wrongful, and tortious, it was, as a matter of law, malicious. However, *Tinker* and its progeny have been expressly overruled by § 523(a)(6) of the Code to the extent that they apply a looser "reckless disregard" standard. H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 77–79

(1978), U.S.Code Cong. & Admin.News 1978, p. 5787.[8]

On a direct appeal, the United States Court of Appeals for the Eleventh Circuit *affirmed* the decision of the bankruptcy judge *in each of these cases.*[9] The factual differences in these cases may be worth noting. The *Askew* case involved an aggravated case of drunken driving and severe injuries to a child walking five feet off the shoulder of the road, upon which a state court had rendered judgment against the debtor for compensatory damages of $125,000 and punitive damages of $50,000. The *Held* case involved a claim for conversion of jewelry pawned to the debtor and partially disposed of by him "in good faith under the mistaken assumption that he had the right to do so under the terms of the agreement." [10] A state court jury had awarded the pledgor $35,000 in compensatory damages and $37,000 in punitive damages, under a charge by the court that the jury could award punitive damages if the acts of the defendants "were willful or showed a reckless indifference to the rights of the plaintiff." [11]

The bankruptcy judge further notes that § 523(a)(6) of the bankruptcy statute has received opposite interpretations by two of the bankruptcy judges of this Court. In another aggravated drunken driving case, *Matter of Wooten,*[12] Bankruptcy Judge Coleman stated, as follows:

> While citing several cases that hold drunken driving is not per se willful and malicious conduct, the *In Re Brown,* su-

2. Formerly, 11 U.S.C. § 35a.(8).

3. Pub.L. No. 95–598 (1978).

4. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6320, 6321. Printed in 4 Norton, Bankruptcy Law & Practice § 523(a)(6), 404 (1983).

5. 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

6. 22 B.R. 641, 642.

7. 34 B.R. 151 (Bankr.M.D.Fl.1983), *aff'd.* 734 F.2d 628 (11th Cir.1984).

8. 34 B.R. 151, 154.

9. *Askew v. Brawner,* 705 F.2d 469 (1983); *In re Held,* 734 F.2d 628 (1984).

10. 34 B.R. 151, 154. Exhibiting consistency (or persistence in error, as one may view it), Judge Paskay reasserted adoption of the "legislative history" statement, in a drunken-driving case, and held the debt dischargeable, in the absence of a "showing of ill will toward the victim." *Matter of Hostetler,* 44 B.R. 886, 888 (Bankr.M.D.Fl.1984).

11. 734 F.2d 628, 629.

12. 30 B.R. 357, 10 B.C.D. 1029 (B.C.N.D.Al. 1983).

pra,[13] p. 593, opinion is to the effect that "The circumstances must show a defendant's driving to be of such a gross nature as to imply malice." It is Mr. Wooten's gross misconduct in this case that sets it apart. Jill and Kevin Prosch were not the object of specific malice, only the victims of Mr. Wooten's intentional misconduct. His willfulness and maliciousness lay in the fact that he *intentionally* intoxicated himself and then *intentionally* drove a "lethal weapon" through the streets of Birmingham, with utter disregard of the consequences.[14] [footnotes added.]

Judge Coleman appears to adopt the position that the failure of Congress to change the wording of the statute as between the prior Bankruptcy Act and the present Bankruptcy Reform Act, taken with the legislative history, means that Congress intended the present law to permit discharge of an act showing a reckless disregard for the consequences but not to require that the act show personal ill will on the part of the debtor in order for a court to find that the debt in question is for a willful and malicious injury and excepted from the discharge provided for under 11 U.S.C. § 727(a).

Judge Coleman then quoted with approval[15] from the opinion in the case of *In re Greenwell*[16] in part, as follows:

What is to be gleaned from this review is that Congress intended that it not be sufficient to classify an act as willful and malicious that it be done for reckless disregard for consequences. An intentional act is required. It is not, however, necessary to find that personal ill will existed in order for there to be a finding of willful and malicious injury. *In re Obermeyer,* 12 B.R. [26] (B.J. [Bkrtcy.] Ohio, 1981). [sic]. In the case before us now, we hold that the voluntary drinking by defendant constituted an intentional act sufficient to support the conclusion that the injury caused by the defendant was willful and malicious. That is, while the legislature meant to circumscribe the scope of the *Tinker* case, its holding that "willful and malicious" under the statute is satisfied where there is an intentional injury remains valid.....[17] [Footnote added]

The difficulty of this concept appears to the writer to be substantial—it appears to stake off an area of uncertain depth and breadth between two nearly exclusive concepts. While not requiring personal ill will by the debtor toward the injured creditor, it appears to require express or implied ill will by the debtor toward the public in general. But, in the usual drunken-driver case, that ill will must be implied from recklessness, as opposed to a deliberate or willful act by the debtor, intended to injure the creditor. A major problem with applying the statute to the ordinary drunken-driving case is the question of at what point is the debtor found to have committed the necessary willful and malicious act which causes the injury to the creditor.

Was it when the debtor first went into a bar or purchased cans of beer or a bottle of wine or whisky, or when the debtor took the first drink of an alcoholic beverage? Perhaps, it was when he took the last drink, although that might be somewhat scant on the required voluntary or willful aspect of the condemned act, or was it the cumulative chain of acts involved in the impairment of the debtor's mental and muscular faculties to a point of "intoxication"? If so, how intoxicated? Is some observable impairment or intoxication all that is required or is a legally-defined criminal stage of intoxication as proscribed in a relevant political realm required or is something independent of that the measure of "sufficiently intoxicated" for a nondis-

---

13. 18 B.R. 591 (Bankr.N.D.Al.1982).

14. 30 B.R. 357, 358; 10 B.C.D. 1029, 1030 (Bankr.N.D.Al.1983). *Contra In re Silas,* 24 B.R. 771, Bankr.L.Rep. ¶ 69,389 (Bankr.N.D.Al.1982) (Wright, J.).

15. *Id.*

16. 21 B.R. 419 (S.D.Oh.1982).

17. 21 B.R. 419, 421.

chargeable tort claim, such as "blind drunk" or "drunk as a bicycle" or "staggering drunk"?

Taking the first drink cannot be the willful and malicious act or even the second or third drink, because it is obvious that millions of partakers do that every day, without thereafter driving or operating a motor vehicle until the effects of the alcohol have long since dissipated. Suppose that one had consumed alcoholic beverages to a point of substantial (and, therefore, observable) impairment of the faculties and, then, undertakes to operate a motor vehicle, is the latter act of the debtor the one which makes a resulting injury "willful and malicious"? If this is the culpable deed, the theory is prickly with further problems.

If a debtor's mental faculties are sufficiently impaired for the person to be classed as satisfactorily drunk, it is doubtful that the decision to drive a motor vehicle (as opposed to not driving) is an entirely reasoned act at that point. Intercepting the events at that point, causes one to wonder how often the effects of the alcohol may enhance the imbiber's perception of still possessing adequate driving ability. This possibility or probability weakens a finding that malice is present in the debtor's action. Also, if the debtor considers the prospect of having problems with operating the motor vehicle, it certainly must be thought that the debtor intends not to have a wreck and not to injure anyone—exceptional cases aside. It can't be presumed that the debtor intends to maim or kill anyone unfortunate enough to be in range of the vehicle's path of travel and, thereby, endanger the life and limb and property of the driver and entangle the driver in all kinds of criminal and civil law problems.

Lastly, considering the act of undertaking to operate the vehicle, one must consider the likelihood that thousands of motor vehicles are operated each day by drivers impaired by alcohol or other drugs without a resulting injury to themselves or to the person or property of others. This means that the drunk driver is not quite in the same class as the person who fires a gun point-blank at another person or into a crowd. As sometimes (but very rarely) happens, the cartridge or shell may misfire and no injury result to the intended recipient of the bullet or the anonymous crowd members, but this result is not that intended by the person who fires the weapon. It is beyond question, however, that the consumption of beverage alcohol is a contributing factor in a large percentage of motor vehicle collisions and that the consequences are often shocking and tragic. Last year it was reported that, annually, the consumption of alcohol has been a factor in wrecks in which 19,500 persons were killed and 650,000 injured, with the dollar cost estimated at $24,000,000,000.[18]

The bankruptcy dischargeability problem comes back to the statute in question—the product of the congressional process—not to the emotional environment of this issue. To the writer, it appears unfortunate that *Tinker v. Colwell* [19] was injected into the debate by the reference in the congressional reports and, necessarily, in the court opinions which followed. *Tinker* appears to suffer from the same treatment as the Holy Bible and the United States Constitution in being often cited but rarely read.

In *Tinker*, the wrongful injury was addressed in the now somewhat passé action of "criminal conversation with the plaintiff's wife." [20] The Supreme Court opinion goes into great detail in pointing out that the action was, originally, a "trespass" or an "assault *vi et armis*" which produces "an injury to the personal rights and property of the husband," on account of which he may recover "for his wounded feelings and honor, the defilement of the marriage bed, and for the doubt thrown upon the

18. Readers Digest 17 (July, 1984).

19. 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

20. *Id.,* 474, 24 S.Ct. at 506. Now, passé to the following extent: "[t]here shall be no civil

claims for alienation of affections, criminal conversation or seduction of any female person of the age of 19 years or over." Code of Alabama § 6–5–331 (1975) (Acts 1935, No. 356, p. 780).

legitimacy of children."[21] The author, Justice Peckham, further clarified the wrongful act in *Tinker* by pointing out that the wife's consent was immaterial "because the wife is in law incapable of giving any consent to affect the husband's rights as against the wrongdoer...."

The opinion in *Tinker* can only be said to deal with the dischargeability question raised by an absence of any proof of specific ill will toward the husband on the part of the debtor. The Supreme Court merely held that such proof was unnecessary because the debtor's misconduct was (by legal fiction) a direct and forceable trespass against the creditor and, being both intentional and severely wrongful, the injury to the creditor was "willful and malicious" as stated in the exception to the debtor's bankruptcy discharge. Simply stated, *Tinker* has never stood for any doctrine whereby the legal consequences of an act rest upon an implication that the doer, by virtue of commiting the act, exhibited a reckless disregard of the probable harmful consequences of the act.

■ Unlike the ancient common law courts, it is not the proper business of the present bankruptcy court to create a common law nondischargeable tort by conjuring a legal fiction.[22] It is purely a question of what Congress said in 11 U.S.C. § 523(a)(6), and the holding in *Tinker*, while relevant to the inquiry because of the similarity of language between that of the 1978 Reform Act and that of the prior statute, does not reach down into the heart of the drunken-driving inquiry. The "willful and malicious injury" language of § 523(a)(6) does not adequately fit the ordinary drunken-driver motor vehicle wreck.

That this construction of the statute is painful to many courts and is too painful to bear for some courts is one possible reading of the many and diverse judicial extrapolations on the meaning of § 523(a)(6). Fixing this legislative product, if in need of modification, would be solely the constitutional and proper business of the Congress—not the courts. That fact is not changed by pronouncements in the legislative halls which propose amending the statute because "some courts" are claimed to have interpreted this section in such a way as to permit drunk drivers to escape with clean bankruptcy discharges.

■ Since the occurrence of the events at bar here, Congress has, in fact, expressed public policy against the discharge of debts for injuries in certain drunken-driving cases. The Bankruptcy Amendments and Federal Judgeship Act of 1984,[23] contains the following:

Subtitle D—Amendments to Title 11, Section 523 Relating to the Discharge of Debts Incurred by Persons Driving While Intoxicated

Sec. 371. Section 523(a) of title 11, United States Code, is amended by—

(1) striking out "or" at the end of paragraph (8); and

(2) by adding the following new paragraph after such paragraph:

"(9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred; or".

This new paragraph does not apply to the present case, commenced before the applicable date of the addition to the statute,[24]

---

**21.** *Id.*

**22.** "All legislative powers herein granted shall be vested in a congress of the United States, which shall consist of a senate and house of representatives." U.S. Const. Art. I, § 1.

**23.** Pub.L. No. 98–353 (July 10, 1984).

**24.** *Id.* Section 553(a) states: "[e]xcept as otherwise provided in this section [remainder of section, (a) and (b), inapplicable to the amendment considered here] the amendments made by this title shall become effective to cases filed 90 days after the date of enactment of this Act."

but some observations here are in order. Any thought of dissecting new paragraph (9) as a carefully-crafted piece of legislative art and noting its subtleties and nuances in the process is greatly discouraged by the awkward fact that § 523(a) already had a paragraph (9) and that, by the 1984 amendment, it now has two paragraphs (9).

Secondly, the 1984 Act does not in any way amend the language of § 523(a)(6) but leaves it as, substantially, it has been for more than three-quarters of a century. Rather than clarifying the pre-existing statute,[25] it appears that the Congress determined to change the pre-existing law and added a new paragraph which describes a new class of nondischargeable debts. Perhaps in the process, it was not thought to be necessary to resist using a contrary statement or two, being politic and having a good ring to the public ear.

This leads into the third observation concerning § 523(a)(9) [1984]. The amendment is worded not in terms of driving while intoxicated in general. It is limited to (1) "operation of a motor vehicle while legally intoxicated under the laws or regulations" only (2) "of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred." Presumably, it does not apply to the operation of a motor vehicle in Mexico or Canada or to the operation of a sail boat, bicycle, or glider or to the riding of a horse—maybe not to an airplane or motor boat. It is only necessary here to note (not interpret) the further limiting words in the 1984 paragraph (9): "to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor...."

In the case of *In re Moore*,[26] the plaintiffs alleged injuries resulting from a colli-sion involving a debtor "legally intoxicated," as to which they had sued in the state court. Upon asking the bankruptcy court to hold that the claims for injuries were nondischargeable under § 523(a)(9) [1984], the debtor moved to dismiss the complaint on the ground that the plaintiffs did not have the type of judgment described in § 523(a)(9) [1984] and would not be able to amend in the state court so as to obtain one. The bankruptcy court denied dismissal by finding that, if the claims or debts were not excepted from the debtor's discharge by § 523(a)(9) [1984] they were excepted by § 523(a)(6), as the statute stood prior to the 1984 change. This case demonstrates that the ghost of misinterpretation of *Tinker* was not laid by the 1978 Act or the 1984 Act. This whole issue demonstrates that legislative history—like artificial grapes—is best contemplated rather than swallowed.

The reason why the meaning of "willful and malicious" injuries or injury has a near century-long history of conflicting and complex judicial and legislative interpretation probably is the simple fact that this was a poor choice of words by Congress. The term plainly includes an unprovoked slap in the face, armed robbery, rape, and the shooting of one's horse or cow by another; but not plainly included are other indignation-arousing acts such as injuries caused by "drag racing," drunk driving, discharging firearms in a densely-populated area, or carelessly keeping a huge, vicious dog. Congress could have included, but did not include, in § 523(a)(6) the following: "and any injury proximately caused to another entity by unjustifiable conduct of the debtor which is substantially dangerous to or creates a substantial possibility of injury to the person or property of another entity." As a result, the courts have for years struggled with whether the statute as en-

**25.** *Contra In re Adams*, 761 F.2d 1422 (9th Cir. 1985), finding that: "[t]he legislative history underlying the 1984 amendment makes it clear that by enacting the amendment, Congress intended to clarify pre-existing law...." 761 F.2d 1422, 1426. *Cf. In re Cecchini*, 772 F.2d 1493 (9th Cir.1985).

**26.** 53 B.R. 259, CCH Bankr.L.Rep. ¶ 70, 776 (Bankr.S.D.Oh.1985).

acted should be read as excluding from the bankruptcy discharge those injuries caused by reckless, heedless, indifferent, or dissolute conduct and which give rise to indignation and call for vindication.

It cannot be denied—in the face of the differing opinions expressed on the meaning of "willful and malicious" in the environment of injuries caused in a drunken-driver collision—that the intent of § 523(a)(6) is not entirely clear. In such a circumstance, established rules of construction are that the "discharge" is remedial and must be construed liberally in favor of the debtor.

In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system.[27] [footnote omitted]

In the case at hand, the interpretation given to § 523(a)(6) by the Circuit Court of Appeals for the Eleventh Circuit in *Held* is controlling,[28] unless the fact that this case did not deal with the drunken-driving type injury makes it not. It is possible that in the drunken-driving type case, the Court would find that the *Held* interpretation was not necessary to the decision in that case and find the debt nondischargeable if for an injury inflicted by an intoxicated operator of a motor vehicle. Having, however, re-examined § 523(a)(6), the bankruptcy judge concludes that neither its terms nor those of its near-identical predecessor excludes this type of debt from a debtor's discharge in a case under chapter 7 of the bankruptcy statute, and a judgment based upon this conclusion will be entered.

27. 3 Collier on Bankruptcy ¶ 523.05A (15th ed. 1979, rel. 14–12/84). See cases collected at n. 1, p. 523–15.

28. The court's affirmance without an opinion in *Askew v. Brawner,* 705 F.2d 469 (1983) must, obviously, carry less weight as to the interpretation of the statute.