In the Matter of Dennis Ray
FRAZEE, Debtor.

William Frank HALE, III, Plaintiff,

v.

Dennis Ray FRAZEE, Defendant.

Bankruptcy No. 85–03279–3.
Adv. No. 85–0712–3.

United States Bankruptcy Court,
W.D. Missouri, W.D.

March 13, 1986.

Joel Pelofsky, Kansas City, Mo., for plaintiff.

Ronald W. McFerrin, Belton, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE DECLARING DEFENDANT'S LIABILITY TO PLAINTIFF TO BE DISCHARGEABLE IN BANKRUPTCY

DENNIS J. STEWART, Bankruptcy Judge.

This is an action in which the plaintiff seeks a decree of nondischargeablity of an indebtedness alleged to have been created by defendant's willful and malicious injury to the person and property of plaintiff within the meaning of § 523(a)(6) of the Bankruptcy Code or by defendant's operation of a motor vehicle while intoxicated within the meaning of § 523(a)(9) of the Bankruptcy Code.[1] The issues joined by the pleadings came on before the bankruptcy court for hearing on February 10, 1986, in Kansas City, Missouri. The plaintiff then appeared personally and by counsel, Joel Pelofsky, Esquire. The defendant appeared personally and by counsel, Ronald W. McFerrin, Esquire. The evidence which was then adduced warrants the following findings of fact.

### Findings of Fact

On the date of August 16, 1983, the plaintiff was proceeding in his automobile, a Toyota Celica, in a northerly direction on Highway 71 in Grandview, Missouri. That highway is, at that location, a divided four-lane highway with a median lowered considerably from the road level. At the precise location in question, 2 miles north of the Main Street exit, the right side of the roadway was likewise elevated and a deep ravine existed on that side of the highway. At the time the series of events occurred, plaintiff was in the right lane of the two lanes in which northerly progress was permissible. At some distance behind him, in an aged Dodge Charger, the defendant was in the process of overtaking him. He had two male passengers in his car, both apparently seated with him in the front seat of the car, and drinking some liquid substance out of cans. According to the testimony of the plaintiff, he could not identify the cans, but he suspected that they were beer cans, although he could state from his personal knowledge and memory no fact upon which this suspicion was based. The defendant, on the other hand, testified that they were all soft drinks and that he had not been drinking then or at any other time on the date in question.[2]

According to the plaintiff's testimony, he was proceeding at a rate of speed of approximately 50 to 55 miles per hour.[3] The defendant was overtaking him at a rate of speed estimated by plaintiff to be 80 or so miles per hour [4] and claimed by the defendant to be much less.[5] The plaintiff first saw the defendant behind him when he moved from the right north-bound lane into the left northbound lane to pass a slow-moving panel truck [6] which he encountered

1. The prayer of the complaint appears to be phrased in the alternative: that, if a decree of nondischargeability cannot be based on willful and malicious injury to property, it should be based upon operation of a motor vehicle while intoxicated.

2. The defendant stated that he was unemployed; that he had spent the prior part of the day watching television at his house for 2 or 3 hours; that he then became bored and went outside to wax his Dodge automobile, which he felt had some value as an operable antique; that, while he was occupied in waxing his automobile, two persons came by and advised him that the father of one of them might be interested in purchasing the automobile; that, thereupon, they commenced to take the vehicle to the location of that person's father's residence; that they were on their way there when the accident in question took place; and that none of them had been drinking at all on the date in question.

3. None of the evidence contradicts the plaintiff's testimonial estimate of his own speed.

4. The plaintiff's testimony appears to be the more credible on the issue of speed. Cf. note 5, *infra.*

5. The defendant did not appear to have a reliable estimate of his own speed. Although he stated that he was certain that he was travelling at a lower rate of speed than the approximately 80 miles per hour estimated by the plaintiff, he did not reliably state what his speed actually was.

6. The speed of this vehicle was not reliably estimated by any of the evidence. If it was

in the right northbound lane. At the same time as plaintiff moved to the left lane, defendant swerved into the left lane, in an apparent attempt to pass both plaintiff and the slow-moving panel truck. When confronted with plaintiff's car in the left lane, he swerved back into the right lane and, because of his travelling at an excessive speed, came suddenly close to impact with the rear of the truck. According to his testimony, he then put on his brakes suddenly with the result that the vehicle which he was driving began suddenly to veer toward the right edge of the roadway. Thereupon, according to his testimony, he panicked and tried desperately to steer the vehicle back onto the roadway and away from the deep ravine. He accordingly cramped the steering wheel in the opposite direction, which resulted in a sudden veering back to the left and sudden impact with the plaintiff's vehicle, which involved the defendant's car's running into and over the rear right hand portion of plaintiff's vehicle, actually running the plaintiff's vehicle off the road and onto the median ravine, where it came to rest still upright. Minor injuries to his person were suffered by the plaintiff.[7] The defendant was able to keep his vehicle on the roadway and upright. He knew that he had run the plaintiff's automobile off the roadway and knew or should have known that he had likely inflicted damage on the plaintiff's vehicle and injury upon the person of the plaintiff.[8] Nevertheless, he did not stop, but rather proceeded onward. It was only much later that his identity was discover-

ed.[9] The defendant, in the hearing of this action, attempted to explain his failure and refusal to stop as a function of the purpose of his being on the highway in the first place. He stated that he believed that he had a prospective buyer of the automobile which he was driving and was proceeding to the residence of that prospective buyer[10]; that he had been unemployed and financially distressed for some considerable period of time and needed badly to consummate the sale; and that he feared that the delay occurred by stopping would mean the loss of the prospect.

## Conclusions of Law

A new provision in the bankruptcy law, § 523(a)(9) of the Bankruptcy Code, makes nondischargeable in bankruptcy liabilities created by a debtor's operation of a motor vehicle while intoxicated.[11] But it is an elementary and necessary precondition of nondischargeability under this section that the fact of intoxication be established.[12] This the evidence in this action does not do. Plaintiff could not say whether the defendant and his shirtless cohorts were intoxicated or even that they were drinking alcoholic beverages. Admittedly, he could not identify the cans from which they were drinking as beer cans or cans of other types of alcoholic beverage. The reckless driving pattern which he described is otherwise accountable for by a careless and inattentive attitude and neither requires nor permits an inference of intoxi-

exceedingly slow, it might well be the case that it was the slowness of the vehicle's movement, rather than defendant's speed, which was the decisive factor in causing the accident.

7. Because of the result reached in this action, it is not necessary to place a value on these damages.

8. Defendant does not deny this in this testimony, and the circumstances clearly show that he knew of his having struck the plaintiff's car and the near certainty that he inflicted damage upon it and, probably, some injury on the occupant of the vehicle.

9. Although the evidence is not clear on this facet of the surrounding facts and circumstances, ap-

parently the defendant was located later either through identification of the automobile or license number, or both.

10. See note 2, *supra.*

11. As pertinent, that section excepts from discharge a debt arising from a judgment "wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle *while legally intoxicated* under the laws or regulations of any jurisdiction within the United States ..." (Emphasis added.)

12. See note 11, *supra.*

cation.[13]  This court therefore concludes and holds that the prerequisites to a decree of nondischargeability under § 523(a)(9), *supra*, have not been evidenced.

■■■  As for the contention that the defendant's conduct, in inflicting injury on the plaintiff and his automobile, was "willful and malicious" within the meaning of § 523(a)(6) of the Bankruptcy Code, the proof again falls short of that which the case decisions hold to be necessary to sustain a decree of nondischargeability under this section.  The case decisions which control this issue in this district explicitly reject that reckless disregard of the rights of another, without more, can suffice as proof of willfulness and malice.  *In re Bellmer*, Civil Action No. 79–6042–CV–SJ (W.D.Mo. 1980), to the effect that "the 'willful and malicious' requirement of the statute is meant to impose the necessity of finding a *subjective*, conscious intent." (Emphasis added.)  See also the legislative history under § 523(a)(6) to the following effect: "Under this paragraph 'willful' means deliberate or intentional.  To the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902), held that a less strict standard is intended, and to the extent that other cases relied on *Tinker* to

apply a 'reckless disregard' standard, they are overruled." House Report No. 95–595, 95th Cong. 1st Sess. 363 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 6318.  An actual, subjective "intent to harm" must be proven according to this line of authority.[14]  Thus, even gross negligence or reckless disregard of the rights of others is not sufficient as a basis upon which to fasten the label of nondischargeability.  Even if the conduct is wholly unreasonable under the circumstances, if subjective bad faith is not shown, it is not proper to decree nondischargeability.  See, e.g., *Matter of Roberts*, 8 B.R. 291, 293 (W.D.Mo.1981).[15]  In this action, none of the evidence points to any actual intent to harm.  Although the evidence clearly shows that the defendant was travelling at a rate of speed which was excessive under the circumstances, the cases hold that this does not provide a sufficient basis for a finding of willful and malicious conduct.[16]  Plaintiff appears to ask the court to place considerable weight upon the hit-and-run character of the conduct.  Those case decisions, however, which hold flight to constitute an admission of pending charges are indispensably predicated on knowledge of a specific pending charge.[17]  In the action at bar, however, no

---

**13.**  The circumstances do not admit of any inference of actually intentional conduct within the meaning of *St. Paul Fire & Marine Ins. Co., v. Vaughn*, 779 F.2d 1003 (4th Cir.1985).  Even when the debtor knew he had to make his car go back to the right in order to avoid hitting the panel truck, his actions can only be described as involuntary and his hitting the plaintiff's automobile at this time, under all the evidence, was, while a product of negligence, nevertheless involuntary and unintentional.

**14.**  But cf. note 13, *supra*.  Even under the more objective standard, that of whether a defendant intentionally violated a known right of the plaintiff, the evidence does not justify a finding of intentional conduct by defendant.

**15.**  Cf. notes 13 and 14, *supra*.

**16.**  See, e.g., *In re Poore*, 37 B.R. 246, 247 (Bkrtcy.D.N.M.1982) (Driving in an "extraordinarily reckless manner" is an insufficient basis to find willful and malicious conduct); *In re Oakes*, 24 B.R. 766 (Bkrtcy.N.D.Ohio 1982) (Excessive speed, without more, does not permit an inference of negligence).  Although a case is

imaginable in which speed is so flagrantly excessive as to be equatable with intention, this is not the case. See *In re Reeves*, 56 B.R. 472, 478, 479 (Bkrtcy.N.D.Ala.1985) ("[T]he courts have for years struggled with whether the statute as enacted should be read as excluding from the bankruptcy discharge those injuries caused by reckless, heedless, indifferent, or dissolute conduct and which give rise to indignation and call for vindication.") Cf. *In re Adams*, 761 F.2d 1422, 1427 (9th Cir.1985) ("[T]he voluntary acts of drinking and driving while intoxicated constitute conduct sufficiently intentional to support a finding of willfulness and malice as contemplated by section 523(a)(6) …") In the action at bar, there is no evidence of intoxication and the evidence falls short of proving a case of gross and blatant conduct.

**17.**  "If the flight is from the scene of the crime, evidence of it seems to be wholly acceptable as a means of locating the accused at the critical time and place.  However, in many situations, the inference of consciousness of guilt of the particular crime is so uncertain and ambiguous and the evidence so prejudicial that one is

charges had been filed. Flight from the scene of the accident, under the circumstances of this action, might well be interpreted as an admission of negligent operation of a motor vehicle, but there is nothing to indicate that the defendant left the scene with a specific charge of driving while intoxicated or willful and malicious conduct in mind. And, while it is true that leaving the scene of the accident is itself intentional conduct, none of the evidence shows that it caused any of the damages for which judgment is sought.[18]

In conclusion, this court cannot condone the conduct of the defendant, but neither can it, on the current state of governing law, decree nondischargeability of his indebtedness to the plaintiff.[19] It is therefore

ORDERED, ADJUDGED AND DECREED that the plaintiff's within complaint for a decree of nondischargeability be, and it is hereby, denied.

forced to wonder whether the evidence is not directed to punishing the 'wicked' generally rather than resolving the issue of guilt of the offense charged." McCormick, Handbook of the Law of Evidence § 271, p. 655 (1972).

**18.** And cf. note 17, *supra.*

**19.** Cf. notes 13 and 14, *supra.*